### COMMONWEALTH *vs.* DORA DIAMOND.

Suffolk.     January 10, 1924. — April 11, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Idle and Disorderly Person. Pleading, Criminal,* Motion to quash, Complaint.

A motion to quash a complaint, on the ground only that it is defective in form, comes too late if it is not filed until the case is pending in the Superior Court on appeal from a judgment entered in a municipal court.

G. L. c. 272, § 53, aims at suppressing the idle and disorderly, and seeks to punish such not for doing specific things but for being rogues, vagabonds, beggars, lewd, idle and disorderly persons. Per WAIT, J.

Under G. L. c. 272, § 53, it is an offence in this Commonwealth to be an "idle and disorderly person" and a complaint in a municipal court making that charge is not fatally defective in substance.

At the trial in a municipal court of a complaint charging a woman with being, on divers days and times between January 6 and April 6 of a certain year, "an idle and disorderly person," the defendant was found guilty and was sentenced. She appealed to the Superior Court where, on her motion, the Commonwealth filed a bill of particulars. The defendant and the Commonwealth thereupon agreed that the facts stated in the bill of particulars were true. From the bill of particulars it appeared that the defendant was "a lewd, wanton and lascivious person in speech or behavior." A motion to quash the complaint in the Superior Court then was filed and was denied. *Held,* that the denial was proper, the complaint not being defective in substance and the motion being filed too late to warrant its allowance on a ground of form.

COMPLAINT, received and sworn to in the Municipal Court of the Roxbury District of the City of Boston on April 6,

1923, charging the defendant with being an idle and disorderly person, as described in the opinion.

On appeal to the Superior Court, the defendant moved for specifications and the Commonwealth specified that from December 24, 1922, to March 24, 1923, the defendant kept an apartment at a certain address where assignations for prostitution occurred and acts of prostitution frequently took place; that the apartment was visited by certain persons in January, February and March, 1923, who found the defendant there and who were solicited by her to engage in lewd acts, she fixing the price and making plain the nature of the acts of lewd intercourse which she solicited, and asserting that she performed many lewd acts to pay the rent of the apartment, which she asserted was $75 per month, and had to work " hard " in that immoral way to do it; that she did no regular work except to " run " this apartment for immoral purposes; that she was a married woman living apart from her husband and received some part of her living expenses from her husband, but not sufficient to maintain her standard of living or to support her.

The defendant filed the motion to quash described in the opinion, and it was denied. The facts as set out in the specifications filed by the Commonwealth then were agreed upon by the attorney for the defendant and the assistant district attorney for the Commonwealth, and there was a trial before *Bishop*, J. The defendant then moved that a verdict of not guilty be ordered. The motion was denied. The jury found the defendant guilty and the trial judge, the defendant consenting, reported the case to this court " for determination of the law questions arising therein," he being of opinion that those questions were so important and doubtful as to require the decision of this court.

The case was submitted on briefs.

*F. M. Costello & H. F. Callahan*, for the defendant.

*H. P. Fielding*, Assistant District Attorney, for the Commonwealth.

WAIT, J. The defendant was convicted in a municipal court on a complaint which charged " that she, the said Diamond, on the sixth day of January in the year of our

Lord one thousand nine hundred and twenty-three, and on divers other days and times between that day and the sixth day of April in the year of our Lord one thousand nine hundred and twenty-three, at said Boston and in said Roxbury district, was and now is an idle and disorderly person; against the peace of said Commonwealth and the form of the statute in such case made and provided."

On appeal, in the Superior Court, the Commonwealth, on defendant's motion, filed a bill of particulars; and, thereupon, the defendant filed a motion to quash on the grounds " that the complaint does not set out an offence known to the law; that the said complaint and the specifications filed by the Commonwealth does not set out an offence known to the law; that the defendant has not been fully, plainly, substantially and formally informed as to the alleged charge of crime against her." The motion was overruled. Before the jury an agreed statement of facts, in the words of the bill of particulars filed by the Commonwealth, was put in · evidence. The defendant then moved that a verdict of not guilty be directed on the grounds set out in the motion to quash and the further ground that the facts in evidence did not warrant a verdict of guilty. This motion was denied. The jury found the defendant guilty. · Thereupon, at the request of the defendant and with her consent, the trial judge reported the case to this court for a determination of the law questions.

There can be no doubt that the complaint and the bill of particulars set out an offence known to the law, G. L. c. 272, § 53; that the · defendant has been fully, plainly, substantially and formally informed of the alleged charge against her; and that the jury has found that the charge is true.

The verdict must stand unless the complaint is so defective in substance that G. L. c. 277, §§ 34, 40, and G. L. c. 278, § 17, do not apply to it.

G. L. c. 277, § 34, provides: " An indictment shall not be quashed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defence; nor shall it be considered

defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars under section forty."

G. L. c. 278, § 17, provides: " An objection to a complaint, indictment or other criminal process for a formal defect apparent on the face thereof shall be taken by demurrer or by motion to quash, assigning specifically the objections relied on, before a judgment has been rendered by a district court or a trial justice, or before a jury has been sworn in the superior court."

If the complaint, therefore, is defective only in form, the motion to quash, which came after a judgment in the lower court, was filed too late. *Commonwealth* v. *Lynn*, 154 Mass. 405.

The prosecution is based upon G. L. c. 272, § 53, which provides that " Rogues and vagabonds, persons who use any juggling or unlawful games or plays, common pipers and fiddlers, stubborn children, runaways, common drunkards, common nightwalkers, both male and female, persons who with offensive or disorderly act or language accost or annoy in public places persons of the opposite sex, pilferers, lewd, wanton and lascivious persons in speech or behavior, common railers and brawlers, persons who neglect their calling or employment or who misspend what they earn and do not provide for themselves or for the support of their families, and all other idle and disorderly persons including therein those persons who neglect all lawful business and habitually misspend their time by frequenting houses of ill fame, gaming houses or tippling shops . . . " may be punished in certain ways.

The offences dealt with by the statute have long been obnoxious to the law of Massachusetts. As early as 1633, II Records of the Court of Assistants, 37, the magistrates dealt with those who spent their time idly or unprofitably. In 1644–45, 1699–1700, 1769–70, colonial and provincial acts punished the lewd, idle and disorderly. After the adoption of the constitution, these laws were gathered into St. 1787, c. 54, entitled " An act for suppressing and punishing of rogues, vagabonds, common beggars, and other

idle, disorderly and lewd persons." By § 1, it provided for houses of correction " to be used & employed for the keeping, correcting & setting to work of rogues, vagabonds, common beggars, & other idle, disorderly & lewd persons." By § 2, it provided for committing thither substantially the varied offenders now enumerated in G. L. c. 272, § 53; and, in § 3, it referred to them as " all such rogues, vagabonds, beggars & other lewd, idle and disorderly persons as aforesaid."

Many amending acts were passed; but St. 1822, c. 82, entitled " An act, in further addition to an act, for suppressing and punishing rogues, vagabonds, common beggars, and other idle, disorderly and lewd persons," first specified the method of procedure against a person " accused of any of the offences or disorders described in the act," etc.

The existing laws on the subject were codified in St. 1834, c. 151, " An act for the regulation of gaols and houses of correction." In 1835 the commissioners engaged in preparing the Revised Statutes reported § 2 of the act of 1834 as § 5 of chapter 143 of their revision; but they added: " and all other idle and disorderly persons " to the list of offenders set out in § 2. This is the first use in the statutes of the words " idle and disorderly persons " for defining a specific class enumerated among the offenders. In the earlier statutes those words were used, either in the title or in sections other than that enumerating the offenders, as descriptive of all the offenders except the rogues, vagabonds and beggars.

The Legislature amended the section as reported by the commissioners by additions taken from some other statutes; but it retained the class " all other idle and disorderly persons" and enacted the amended section as Rev. Sts. c. 143, § 5. The statute has come down through the General Statutes (c. 165, § 28), the Public Statutes (c. 207, § 29), the Revised Laws (c. 212, § 46), to the General Laws (c. 272, § 53), retaining in each revision the class " all other idle and disorderly persons."

St. 1856, c. 186, entitled " An Act concerning idle and disorderly persons " enacted: " The words ' idle and dis-

orderly persons' in the fifth section of the one hundred forty-third chapter of the Revised Statutes, shall be held to include all persons, who neglect all lawful business, and habitually misspend their time, by frequenting houses of ill fame, gaming-houses or tipling shops." This act did not confine the words " all other idle and disorderly persons" to the persons it described; for the Legislature in enacting the General Statutes, which was in progress when the act of 1856 was passed, combined the act of 1856 with the preceding statutes by changing the language of Rev. Sts. c. 143, § 5, so that Gen. Sts. c. 165, § 28, reads: " and all other idle and disorderly persons, including therein those persons who neglect all lawful business and habitually misspend their time by frequenting houses of ill fame, gaming houses, or tippling shops." This form of words negatives any convincing argument that the term " idle and disorderly persons " which since 1640 had been used in a much wider sense in the laws of this Commonwealth was, after 1856, confined to the particular class referred to by St. 1856, c. 186.

The statute aims at suppressing the idle and disorderly. It punishes them not for doing certain specified things but for being rogues, vagabonds, beggars, lewd, idle and disorderly persons. " The statute punishes being a certain kind of person, not doing a certain overt act." *Commonwealth* v. *O'Brien*, 179 Mass. 533, 534. *Commonwealth* v. *Parker*, 4 Allen, 313.

No form of complaint or indictment under the statute is found which charges simply that the defendant is " an idle and disorderly person; " nor is there any decision which holds it insufficient. The act for the simplification of criminal pleading, St. 1899, c. 409, sets out six forms of complaint for offenders under this statute (then Pub. Sts. c. 207, § 29); for a common drunkard, a common nightwalker, a stubborn child, a vagabond, for " lewdness " and for " idle and disorderly." The form for " idle and disorderly " is drawn to meet the offence described in St. 1856, c. 186, and follows the decision in *Commonwealth* v. *Sullivan*, 5 Allen, 511, decided in 1862. Others of the forms had been

approved by this court: *Commonwealth* v. *Whitney*, 11 Cush. 477 (a common drunkard); *Commonwealth* v. *Parker*, 4 Allen, 313 (a lewd, wanton and lascivious person). This court had also held the charge " a common railer and brawler " to be sufficient. *Stratton* v. *Commonwealth*, 10 Met. 217. The act specifically provides (§ 1) that an indictment sufficient before the act shall continue to be sufficient, and (§ 2) " The forms annexed to this act shall be sufficient in all cases in which they are applicable; in other cases, forms may be used as nearly similar as the nature of the case and the rules prescribed in this act will permit."

In view of the long course of legislation, whatever may be the law elsewhere, in Massachusetts it is an offence to be an " idle and disorderly person; " and a complaint making that charge is not fatally defective in substance.

Had the form charging the defendant, under this statute, with being " a lewd, wanton and lascivious person in speech or behavior " been used, there could be no doubt of the propriety of her conviction upon the evidence here. The law does not require that this trial and just verdict shall fail because one set of words accurately describing the defendant was used in the complaint instead of another. It is the situation G. L. c. 277, §§ 17, 18 and 40, were enacted to meet and to remedy.

The motion to quash was overruled properly. The trial judge was right in refusing to direct a verdict of acquittal. The verdict must stand.

*So ordered.*