COMMONWEALTH vs. EDWARD J. SEFRANKA.

Plymouth.  September 8, 1980. — December 15, 1980.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Due Process of Law*, Vagueness of statute.  *Lewd, Wanton and Lascivious Person.  Statute*, Construction.

Because the "lewd, wanton and lascivious persons" provision of G. L. c. 272, § 53, is unconstitutionally vague, the provision is to be construed so as to prohibit only the commission of conduct in a public place, or the public solicitation of conduct to be performed in a public place, when the conduct committed or solicited involves the touching of the genitals, buttocks, or female breasts, for purposes of sexual arousal, gratification, or offense, by a person who knows or should know of the presence of a person or persons who may be offended by the conduct.  [112-116]

COMPLAINT received and sworn to in the District Court of Brockton on April 27, 1978.

On appeal to the Superior Court, the case was heard by *Dwyer*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Stephen R. Wainwright* for the defendant.

*Robert M. Payton*, Assistant District Attorney, for the Commonwealth.

*George H. Butcher, III, & Andrea L. Davis*, for Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

HENNESSEY, C.J.  The defendant Edward J. Sefranka was convicted in the Superior Court in the county of Plymouth for being a "lewd, wanton and lascivious person in speech

or behavior" in violation of G. L. c. 272, § 53.[1] He appeals on the ground that the words on which the conviction was based are protected by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. The statute is also challenged as unconstitutionally vague. We reverse the conviction.

The facts are not in dispute. As detailed in the police report, which formed the statement of agreed facts both at trial and on appeal, three plainclothes police officers went in separate unmarked cars to a public rest area on Route 24. They did so after receiving "complaints" about the rest area; the nature of the complaints is not specified in the police report. When the police arrived, they saw several parked cars with male occupants. The police noted that the men would flash their parking lights at each other, whereupon one would get out of his car, approach the other car whose lights had been flashing, and get inside the other car; the two men would "disappear" for a few minutes. The police officers saw the defendant approach two cars, but there is no evidence of his having participated in any sexual activity while at the rest area, and the Commonwealth does not argue otherwise.

The police officers decided that one of them should pull into the line of cars that were flashing lights and "try [his] luck." A while later, the defendant pulled behind the unmarked cruiser and flashed his parking lights. After several minutes, the police officer flashed his lights back at the defendant. The defendant then approached the cruiser, conversed with the officer, and invited the officer to return

---

[1] General Laws c. 272, § 53, as amended through St. 1973, c. 1073, § 20, in its entirety, reads as follows: "Common night walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly act or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, prostitutes, disturbers of the peace, keepers of noisy and disorderly houses and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

with him to his home and engage in oral copulation. The officer responded that he did not want to leave the rest area and indicated that he preferred the sexual activity to take place at the rest area. Replying that it was not safe at the rest area, the defendant said, "Well, I guess I'll see you later," got into his parked car, and drove away. He was arrested a few minutes later and charged with being a disorderly person and a lewd, wanton, and lascivious person, both in violation of G. L. c. 272, § 53. He was convicted of the latter charge only,[2] and appealed to the Appeals Court. The case was transferred to this court on our own motion.

We hold that the "lewd, wanton and lascivious persons" provision of c. 272, § 53, unless aided by appropriate judicial construction, is unconstitutionally vague. Under the construction we shall establish in this opinion, the provision prohibits only the solicitation or commission of a public sexual touching, in the presence of persons who may be offended by the act. As so construed, the provision is neither vague nor overbroad.

An essential principle of due process is that a statute may not proscribe conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926). *Grayned v. Rockford*, 408 U.S. 104, 108 n.3 (1972). In addition to its failure to give fair warning, a vague statute offends by its lack of reasonably clear guidelines for law enforcement and its consequent encouragement of arbitrary and erratic arrests and prosecutions. *Papachristou v. Jacksonville*, 405 U.S. 156, 162, 171 (1972) (striking down as "plainly unconstitutional" Jacksonville's equivalent of § 53, before the Supreme Court on vagrancy provisions); *Grayned v. Rockford, supra* at 108-109. Further, when a statute is capable of affecting First Amendment interests, as is true of § 53's punishment of spoken words, the vagueness

---

[2] It is unclear from the record at what point the disorderly person charge was dropped.

doctrine demands even greater precision than in other contexts. *Smith* v. *Goguen,* 415 U.S. 566, 573 (1974). *Grayned* v. *Rockford, supra* at 109 & n.5 (noting that "a precise statute . . . assures us that the legislature has focused on the First Amendment interests and determined that other governmental policies compel regulation").

On the other hand, a law is not vague if its meaning is ascertainable by reference to similar or related statutes, or if the questioned terms have a commonly understood meaning. See *Commonwealth* v. *King,* 374 Mass. 5, 12-13 (1977); *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971). Further, even a vague statute may be made constitutionally definite by giving it a reasonable construction. See, e.g., *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595-598 (1975); *Alegata* v. *Commonwealth,* 353 Mass. 287, 303-304 (1967).

Having in mind the above principles, we turn first to the language of the challenged provision punishing "lewd, wanton and lascivious persons in speech or behavior." This language, standing alone, fails to inform a person of ordinary intelligence what conduct is proscribed, as there is no commonly accepted understanding of the quoted terms. Cf. *Commonwealth* v. *King,* 374 Mass. 5, 12 (1974) ("prostitute" conveys a specific, commonly understood meaning). In ordinary usage, terms such as "lewd" and "wanton" "do not imply a definite and specific referent, but apply broadly to conduct which the speaker considers beyond the bounds of propriety." *Pryor* v. *Municipal Court for the Los Angeles Judicial Dist.,* 25 Cal. 3d 238, 246-247 (1979) (attempting to define "lewd or dissolute conduct").[3] See *State*

---

[3] As the Supreme Court of California noted in *Pryor,* "Some jurors would find that acts of extramarital intercourse fall within [the challenged terms]; some would draw the line between intercourse and other sexual acts; others would distinguish between homosexual and heterosexual acts. Thus one could not determine what actions are rendered criminal by reading the statute or even the decisions which interpret it. He must gauge the temper of the community, and predict at his peril the moral and sexual attitudes of . . . the jury." 25 Cal. 3d at 251-252.

v. *Kueny*, 215 N.W.2d 215, 218 (Iowa 1974) (noting such terms are effectively meaningless today and unacceptable in criminal statutes absent an attendant definition of the specific conduct proscribed).[4]

In our search for a clear meaning of the challenged provision, we next examine its history and its function in light of other provisions of § 53. "Lewd, wanton and lascivious" persons, along with the "idle" and the "disorderly," have been punishable in this Commonwealth since at least 1699. See *Commonwealth* v. *Templeman*, 376 Mass. 533, 535 (1978); *Commonwealth* v. *Diamond*, 248 Mass. 511, 514-H15 (1924). After adoption of the Massachusetts Constitution, the early provincial laws punishing the lewd, idle and disorderly were gathered together into St. 1787, c. 54, entitled, "An Act for suppressing and punishing of rogues, vagabonds, common beggars, and other idle, disorderly and lewd persons." *Id.* From its inception, the statute was aimed at punishing these people for their status. See *Commonwealth* v. *Diamond*, *supra* at 516. The gravamen of the various offenses was "being a person of the character and behavior described," *Commonwealth* v. *Parker*, 4 Allen 313, 314 (1862), rather than "doing a certain overt act," *Commonwealth* v. *O'Brien*, 179 Mass. 533, 534 (1901). Legislative revisions since 1943 have struck from § 53 provisions punishing "rogues," "vagabonds," and "common drunkards," and in 1959 "prostitution" was added to the statute as a separate offense. See *Alegata* v. *Commonwealth*, 353 Mass. 287, 303 (1967).

Most of the provisions in § 53 have been attacked for vagueness. See *Commonwealth* v. *Templeman*, 376 Mass. 533, 535 (1978), for a complete list of cases. This court has saved many of the challenged provisions by examining stat-

---

[4] The imprecision of these words is seen also in their dictionary definitions. Each of the three words is defined with reference to the other two, as well as to further synonyms such as "unchaste" and "lustful." Webster's Third New Int'l Dictionary 1301, 2575, 1274 (1961). See *Commonwealth* v. *A Juvenile (No. 2)*, 6 Mass. App. Ct. 194, 197 n.1 (1978).

utory and case law concerning each provision to determine with specificity the elements of the charged crime. See, e.g., *Commonwealth* v. *King*, 374 Mass. 5, 12-13 (1977); *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 596-597 (1975); *Commonwealth* v. *Brasher*, 359 Mass. 550, 555 (1971).

The cases construing the "lewd, wanton and lascivious persons" provision, however, provide no greater degree of specificity than do the terms of the provision standing alone. Before the 1978 case of *Commonwealth* v. *Templeman*, 376 Mass. 533 (1978), this court had dealt with charged violations of the provision in only two cases, neither of which spelled out the elements necessary to sustain a conviction or specified the exact nature of the criminal speech or conduct engaged in by the defendant. *Commonwealth* v. *Parker*, 4 Allen 313 (1862). *Commonwealth* v. *O'Brien*, 179 Mass. 533 (1901). Apparently, before the separate offense of "prostitution" was added to § 53, prostitutes were punishable as lewd, wanton and lascivious persons. See *Commonwealth* v. *King*, 374 Mass. 5, 11-12 (1977); *Commonwealth* v. *Diamond*, 248 Mass. 511, 512, 517 (1924). In *King*, this court noted that the Legislature failed to define the lewd, wanton and lascivious conduct it reclassified in 1959 as prostitution. 374 Mass. at 12. Nor did the Legislature define what lewd, wanton and lascivious conduct, if any, it *declined* to reclassify as prostitution.

In *Commonwealth* v. *Templeman,* *supra,* we limited the reach of the "lewd, wanton and lascivious persons" provision in certain material respects. We said that the provision can be applied only to public, not private, conduct. *Id.* at 537. This conclusion was in line with our reasoning in *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974), in which we held the statutory proscription against "unnatural and lascivious acts," G. L. c. 272, § 53, inapplicable to the private, consensual conduct of adults,[5] and in *Common-*

---

[5] We reached our conclusion in *Balthazar* on the basis of recent cases expanding free speech and privacy rights in sex-related areas, and "in light of our own awareness that community values on the subject of permissible

*wealth* v. *Scagliotti,* 373 Mass. 626 (1977), which involved, as does the present case, a defendant's offer to perform fellatio on an undercover policeman. In *Scagliotti* we reversed the defendant's convictions for soliciting another to perform an unnatural act and remanded for a new trial, because the trial judge improperly had removed from the jury the crucial issue of "whether the defendant had offered to commit the act in a public place." *Id.* at 628.[6] In addition to our requirement in *Templeman* that any sexual conduct punishable as "lewd, wanton and lascivious" must be public conduct, we concluded that the provision cannot be applied to speech or expressive conduct or to activities involving the lawful exercise of First Amendment rights, and that it can be used to punish defined conduct only, and not to punish status. *Id.* at 536-537. These limitations, deemed constitutionally required, were derived from our cases construing other § 53 provisions so as to avoid the defects of overbreadth and vagueness. See *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 592, 597 (1975); *Commonwealth* v. *King,* 374 Mass. 5, 15 n.9 (1977). Nowhere in *Templeman* did we define in positive terms the public conduct that *could* be punished as lewd, wanton and lascivious.[7] See *Com-*

---

sexual conduct no longer are as monolithic" as they were in past decades. 366 Mass. at 301-302.

   [6] The defendant in the present case offered to commit the sexual act in the privacy of his own home, and not in any public place.

   [7] The *Templeman* opinion did refer, without comment, to a statement by the Appeals Court that the terms describe "a type of person who commonly engages in or is willing to engage in sexual conduct which is repugnant to prevailing moral standards." *Templeman* at 536, quoting *Commonwealth* v. *A Juvenile (No. 2),* 6 Mass. App. Ct. 194, 197 (1978). The Commonwealth, both in its brief and in oral argument, used similar language to justify the defendant's conviction under the statute. To the extent that this definition allows punishment for a person's status rather than for particular conduct, it is constitutionally impermissible. See *Commonwealth* v. *Templeman, supra* at 537; *Commonwealth* v. *King, supra* at 15 n.9. To the extent, moreover, that the definition allows punishment for private, consensual sexual conduct of adults, it runs counter to our holdings protecting from criminal prosecution such con-

monwealth v. Templeman, supra at 539 (Kaplan, J., concurring).

We thus conclude that Massachusetts decisions do not provide a clear and definite content for the "lewd, wanton and lascivious" provision. As written and construed, the provision fails to provide fair warning of what conduct is forbidden and hence is unconstitutionally vague, rendering the defendant's conviction invalid.[8] For like reasons, decisions in other jurisdictions have found statutes with wording similar to the § 53 provision unconstitutionally vague. See *Morgan* v. *Detroit*, 389 F. Supp. 922 (E.D. Mich. 1975); *Pryor* v. *Municipal Court for the Los Angeles Judicial Dist.*, 25 Cal. 3d 238 (1979); *District of Columbia* v. *Walters*, 319 A.2d 332 (D.C.), appeal dismissed for want of a properly presented Federal question and cert. denied, 419 U.S. 1065 (1974).[9]

Our conclusion that the § 53 provision is unconstitutionally vague as construed by past decisions does not require us to invalidate the provision. As noted earlier, if a reasonable narrowing construction to a vague statute can be supplied, this court has done so in order to sustain its validity. We have encountered great difficulty in attempting to

---

duct of a noncommercial nature. See *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974); *Commonwealth* v. *Scagliotti*, 373 Mass. 626, 628 (1977).

[8] In the view we have taken of this case, we need not determine whether, as the Commonwealth contends, the defendant's solicitation of oral sex constituted "fighting words," for even "fighting words" may not be punished under an unconstitutionally vague statute. See, e.g., *Plummer* v. *Columbus*, 414 U.S. 2, 3 (1973).

[9] When statutes with similar phraseology have been held not vague, it has been because the words were paired with other statutory terms providing a meaningful context, see *Anderson* v. *State*, 562 P.2d 351, 357 (Alas. 1977), and cases cited in *District of Columbia* v. *Walters*, supra at 335, or because the statute has been construed to cover sexual acts, or solicitations of sexual acts, which if accomplished would be criminally punishable. See, e.g., *District of Columbia* v. *Garcia*, 335 A.2d 217, 221-222 (D.C. 1975). The Commonwealth's reliance on *Garcia* is hence misplaced.

define specifically the conduct proscribed by the "lewd, wanton and lascivious persons" provision. Given the history of the provision and its apparent initial application primarily to prostitution, now punishable as a separate offense, *Commonwealth* v. *King*, 374 Mass. 5, 11-12 (1977), we are hard put to find sufficient legislative indication of what distinct function the provision serves today. See *District of Columbia* v. *Walters*, 319 A.2d 332, 336 (D.C. 1974), in which the court pronounced the statutory provision against "lewd, obscene, or indecent act[s]" as "so lacking in coordinates, other than its apparent application to sexual matters, that inadequate guidance has been given us for *our* development of a remedial formula for a saving construction."

We have examined other sex-related criminal offenses established in our statutes. Separate proscriptions already exist in Massachusetts against indecent exposure, G. L. c. 272, § 53; lewd and lascivious cohabitation by a man and woman not married to each other, c. 272, § 16; "open and gross lewdness and lascivious behaviour," c. 272, § 16; fornication, c. 272, § 18; crimes against nature, c. 272, § 34; and unnatural and lascivious acts, c. 272, §§ 35, 35A. The "open and gross lewdness" provision has been said to be "closely similar" to the offense of indecent exposure, *Commonwealth* v. *Broadland*, 315 Mass. 20, 22 (1943), and has been applied primarily to indecent exposure in front of, and sexual conduct with, children. See *Commonwealth* v. *Templeman*, 376 Mass. 533, 538 (1978), and cases cited. The "unnatural and lascivious acts" statute has been held to include public fellatio and oral-anal contact. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 299, 302 (1974) (holding the statute inapplicable to the private, consensual conduct of adults). After examining all of the above statutes, and proceeding under the reasonable assumption that the Legislature intended a comprehensive and integrated approach, we can perceive for the challenged provision a function in the penal law which appears to be consistent with legislative intent. None of the above statutes, with the

possible exception of "open and gross lewdness," G. L. c. 272, § 16, deals with a public sexual touching that does not rise to the level of a completed sexual act. Nor do these statutes encompass public solicitations of such conduct. The "lewd, wanton and lascivious persons" provision of § 53 thus may serve the function of filling this gap in the criminal law.

The California Supreme Court's opinion in *Pryor* v. *Municipal Court for the Los Angeles Judicial Dist.*, 25 Cal. 3d 238 (1979), provides some assistance in our attempt to specify the sexually motivated public conduct punishable under the § 53 provision. The California statute at issue in *Pryor* punished any person "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" (emphasis deleted). *Id.* at 243-244. The court held the statute vague as construed by past cases, which had been decided at a time, no longer prevailing, when many forms of private consensual sexual acts were illegal in California. *Id.* at 253-254. The court then adopted a limited construction of the statute to prohibit only the commission of conduct in public "which involves the touching of the genitals, buttocks, or female breast, for purposes of sexual arousal, gratification, annoyance or offense, by a person who knows or should know of the presence of persons who may be offended by the conduct." *Id.* at 244, 256-257. Under the court's construction, the statute could lawfully prohibit the solicitation of such conduct only if the solicitation occurred in public and only if the conduct itself was to be performed in public. *Id.* at 257.

In order to satisfy constitutional standards of specificity, we think a similarly definite construction is appropriate here. We therefore construe the "lewd, wanton and lascivious persons" provision to prohibit only the commission of conduct in a public place, or the public solicitation of conduct to be performed in a public place, when the conduct committed or solicited involves the touching of the genitals, buttocks, or female breasts, for purposes of sexual arousal,

gratification, or offense, by a person who knows or should know of the presence of a person or persons who may be offended by the conduct.  As so construed, the provision does not impose generalized, indefinite behavioral standards under which the criminality of conduct depends on the personal predilections of the judge or the jury; nor does it invite discriminatory enforcement by police and prosecutors. Further by limiting the speech proscribed to the solicitation of particular public sexual conduct which is itself criminal,[10] the construed provision does not reach speech protected by the First Amendment, and hence avoids any problems of overbreadth.  See *Gooding* v. *Wilson,* 405 U.S. 518, 520 (1972); *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586 (1975).

In summary, we hold that the "lewd, wanton and lascivious persons" provision was unconstitutionally vague as construed by our past decisions in effect at the time of the defendant's conviction.  Thus the conviction must be reversed, and a finding of not guilty entered.  Under the construction established in this opinion, the statutory provision complies with constitutional standards.[11]

*Judgment reversed.*

*Finding set aside.*

*Judgment for the defendant.*

---

[10] Cf. *Commonwealth* v. *King,* 374 Mass. 5, 10, 12 (1977) (defining prostitution as including both the performance of indiscriminate sexual acts for hire and the solicitation or agreement to perform such acts).  The case before us addresses *noncommercial* sexual solicitation and activity only, and does not limit the offense of prostitution, punishable under a separate provision of § 53.

[11] We note that even when judged under the narrowing construction adopted in this opinion, the defendant's speech and conduct falls outside the statutory prohibition.  No public sexual conduct took place; nor did the defendant solicit any such conduct.