Toomey, J.
Introduction
The defendant David Gousie (“Gousie”) has been charged with dissemination of visual material of child in state of sexual conduct in violation of G.L.c. 272, §29B(b), dissemination of visual material of child in state of nudity in violation of G.L.c. 272, §29B(a), possession with intent to disseminate visual material of child in state of sexual conduct in violation of G.L.c. *586 272, §29B(b), possession with intent to disseminate visual material of child in state of nudity in violation of G.L.c. 272, §29B(a), attempted dissemination to a minor of matter harmful to a minor in violation of G.L.c. 274, §6 and G.L.c. 272, §28, and knowing possession of visual material of child depicted in sexual conduct in violation of G.L.c. 272, §29C.
The defendant now moves to dismiss the indictments, arguing that, because computer transmitted images are not “visual material” under the statute, the grand jury heard insufficient evidence to support the charges and, arguing also, that the child pornography statutes are unconstitutional. Further, the defendant moves to suppress the evidence seized from his computer pursuant to a warrant on the grounds that the evidence was obtained in violation of his rights under the Fourth Amendment to the United Stated Constitution, Article 14 of the Massachusetts Declaration of Rights, and G.L.c. 276, §2. For the reasons set forth below, the defendant's motion to dismiss and motion to suppress are DENIED.
Background
On January 26, 2001, a Bristol County Grand Jury returned a six-count indictment charging Gousie with, as noted supra, a variety of offenses involving child pornography. In each of the four counts alleging violations of Section 29B, Gousie is accused of transmitting, over a three-month period to an undercover police officer from Keene, New Hampshire, who was posing as a fourteen-year-old boy, computer images of children in a state of nudity and children engaged in sexual conduct. Upon discovering that the sender of those images was located within Massachusetts, the police officer referred the matter to the State Police computer crime unit assigned to the Massachusetts Attorney General’s office. Further investigation resulted in the issuance of a search warrant for the defendant’s residence; the residence was searched and the defendant’s computer and data storage devices were seized. The defendant now moves to dismiss the indictments and suppress the evidence seized from his home.
Discussion
1. Motion to dismiss asserting insufficiency of evidence presented to the grand jury
The defendant’s principal argument within his motion to dismiss is that the statute fails to penalize the alleged conduct because the computer images, by which he is alleged to have disseminated or possessed with intent to disseminate, “could never have been ‘possessed,’ within the plain meaning of that word as employed in the pertinent statute ...” The defendant’s contention, however, is without merit. Computer images are indeed capable of possession. In fact, G.L.c. 272, §29C, entitled “Knowing purchase or possession of visual material of child depicted in sexual conduct” (emphasis added), includes “depiction by computer” as an item of child pornography, the possession of which is unlawful. Alternatively, this court will conclude that the question of whether computer images are capable of possession is not dispositive of the ultimate determination of the viability of the indictments.
Reading the defendant’s motion broadly to assert that computer images are not included within the term “visual images” under G.L.c. 272, §§29B(a) and (b), this Court is not persuaded by the defendant’s contention. Although not explicitly stated, the defendant’s motion to dismiss is premised upon the proposition that the evidence presented to the grand jury was insufficient to support those indictments. See Commonwealth v. McCarthy, 385 Mass. 160 (1982). Specifically, he suggests that G.L.c. 272, §29B(a)[1] and G.L.c. 272, §29B(b),[2] the statutes under which the indictments lie, do not include computer images within the statutory term “visual material,” as defined by G.L.c. 272, §31.[3]
The statutory definition of “visual material” encompasses “any picture” and “any photograph.” G.L.c. 272, §31. A picture is “a design or representation made by various means (as painting, drawing, or photography).” Webster’s Ninth New Collegiate Dictionary 890 (1990). A photograph is “a picture of likeness obtained by photography.” Id. at 885. Because digital photography is a process of photography, the likeness or representation that results therefrom must, in this Court’s judgment, be considered a picture or photograph. Although there is no evidence from which the court might conclude that the images in question were taken by a traditional camera and that a scanner was used to download the images to a computer or, alternatively, that a digital camera was used and the images were directly downloaded, the manner in which the depictions were initially recorded is of no moment. In either case, the resulting images are pictures and photographs and, hence, “visual material” within the pertinent statutes.
This Court recognizes that there is a principled divergence among Superior Court Justices who have considered the issue. See Commonwealth v. Perry, Cr. No. 2000-00478-1&2 (Bristol Super Ct. July 26, 2001) (G.L.c. 272, §§29B(a) and (b) include dissemination of computer images within its prohibited conduct); Commonwealth v. Kelly, Cr. No. 102170-72 (Plymouth Super. Ct. March 26, 2001) (same). Contra, Commonwealth v. Hunold, Cr. No. 00-967 (001-010) (Middlesex Super. Ct. January 25, 2001) ( G.L.c. 272, §§29B(a) and (b) does not include dissemination of computer images within its prohibited conduct); Commonwealth v. Cooper, Cr. No. 98-0168 (Franklin Super. Ct. September 12, 2000) (same). Nevertheless, this Court finds more persuasive the reasoning expressed in Kelly and Perry and will follow their lead.
The broad reach of the term "visual material” — the statutory definition of which is cast in unrestricted terms, to wit, “any . . . photograph” and “any . . . *587 picture” — clearly expresses legislative intent, viz, to preclude dissemination, knowingly and with lascivious intent, of any form of visual representation that depicts a child in a state of sexual conduct or in a state of nudity. Commonwealth v. Kelly, Cr. No. 102170-72 (Plymouth Super. Ct. March 26, 2001) (12 Mass. L. Rptr. 717). The definition of “disseminate” includes “publish, produce, print, manufacture, distribute, . . . exhibit or display.” G.L.c. 272, §31. The statutory emphasis is on the content of the material and the intent of the person disseminating such material; the draftsmen were not so much concerned with the manner in which the image was distributed, exhibited, or displayed. Commonwealth v. Kelly, Cr. No. 102170-72 (Plymouth Super. Ct. March 26, 2001) (12 Mass. L. Rptr. 717). The statutes criminalize such dissemination whether accomplished by way of hand, mail, facsimile, or through the use of e-mail. The judiciary ought, absent constitutional inhibitions, give effect to the purpose of the law gleaned from the Legislature’s choice of language.
The Legislature’s objective of including a broad range of “visual material” in its proscription is further demonstrated by Section 31’s second sentence which provides: “(u)ndeveloped photographs, pictures, . . . and similar visual representations or reproductions may be visual materials notwithstanding that processing, development or similar acts may be required to make the contents thereof apparent.” Thus, in determining whether an image is a “visual material” within G.L.c. 272, the manner of its dissemination is insignificant. Whether further acts are required to make the image apparent to the naked eye, by, for example, keying a computer board, does not render the image any less a “visual material.”
The defendant suggests in his motion that the “computer pixels were not reduced” to a photograph or picture “until they were so transmogrified by the Commonwealth." The statute, however, is concerned with the party who is disseminating the images, whether or not undeveloped or yet to be “transmogrified,” not with the party who is processing or developing the images. Additionally, e-mail images are capable of being displayed on a computer monitor with the click of a mouse, and further, they can be printed into picture form with another click. This Court rejects the proposition that “dissemination” does not occur until the mouse is clicked. Rather, this court is convinced that the Legislature intended “dissemination” to occur at the moment the visual materials were entered into the channels of communication. One who unlawfully inserts the “visual material” into the process of publication is a disseminator within the contemplation of the statute.
Although ambiguous criminal statutes are to be construed strictly against the Commonwealth, see Commonwealth v. Smithson, 41 Mass.App.Ct. 545, 553 (1999), this Court concludes that there is no ambiguity in the terms “any photograph” and “any picture” and those terms unambiguously include, within their definitions, items which are computer images. See Commonwealth v. Kelly, Cr. No. 102170-72 (Plymouth Super. Ct. March 26, 2001) (12 Mass. L. Rptr. 717). There is no occasion at bar to engage in a strict construction analysis. However, even assuming the term “visual images” is ambiguous as applied to computer images, the rule of lenity does not require the Court to reject an available and sensible statutory interpretation in favor of a fanciful or perverse one. Commonwealth v. Carrion, 431 Mass. 44, 46 (2000). If this Court were to adopt the defendant’s reasoning, the result would be a statutory scheme whereby an individual would be prohibited from unlawfully possessing a computer image depicting a child in any act of sexual conduct, but would not be prohibited from inserting that same computer image into the pipeline to disclosure. Compare G.L.c. 272, §29B(b) (2000 ed.) with G.L.c. 272, §29C (2000 ed.). Such a result is patently at odds with the undisputed legislative purpose of restricting the availability of child pornography to those circumstances that enjoy constitutional approbation.
We note also that, the 1988 Amendment to G.L.c. 272, §31, which added the term “videotape” to the definition of “visual material,” does not suggest that the pre-amendment portions of the definition should be read narrowly. See United States v. Hockings, 129 F.3d 1069, 1071-1072 (9th Cir. 1997) (an amendment to a statute does not necessarily indicate that the unamended statute means the opposite); State v. Weeks, 761 A.2d 44, 46 (Me. 2000) (statutory amendment including computer data files in prohibited images does not mean they were not included within prohibited conduct prior to amendment); State v. Brady, 753 A.2d 1175, 1177-78 (N.J. Super. A.D. 2000) (statutory amendment including computer program or file was intended to clarify existing law rather than change substantive law). Thus, it is unavailing to suggest that the Massachusetts Legislature, by adding the term “videotape” to the definition of visual materials, intended to narrowly define "visual material,” rather than, as seems more compelling, to clarify existing law.
Similarly, the enactment of G.L.c. 272, §29C, in 1997, does not suggest that computer images are not included within the definition of “visual material” within Sections 29B(a) and 29B(b). Section 29C explicitly prohibits the purchasing and possessing of, among other things, “depictions by computer” of any child engaged in any act of sexual intercourse. It has been argued that the Legislature, by explicitly including computer images within, Section 29C, the possession statute, and not including such language in, Section 29B, the dissemination statute, thereby expressed its intention not to criminalize dissemination of computer images depicting children in a state of sexual conduct *588 or nudity. The argument, however, is fanciful. In enacting the possession statute, the General Court determined that, ‘‘to protect children from sexual exploitation it is necessary to prohibit the production of material which involves or is derived from such exploitation and to exclude all such materials from the channels of trade and commerce.” St. 1997, c. 181, §1 (emphasis added). That finding is evocative that the Legislature intended that computer images depicting sexual exploitation of children should be excluded from the Commonwealth in all forms. The finding does not suggest that, by enacting Section 29C, the General Court meant to excise from the construction of the dissemination statute the more specific terms of the possession statute. We will not read such a restrictive purpose into the crafting of Section 29C.[4]
The construction of the terms, “picture" and “photograph,” must be allowed reasonably to reflect technological advances. See Commonwealth v. Perry, Cr. No. 2000-00478-1 & 2 (Bristol Super. Ct. July 26, 2001). The Legislature would be frequently frustrated if courts were to interpret its words with literal obsession and without employing sensible interpretations mirroring the progress of technology. The Legislature ought not to be required to amend all statutes that were framed in the context of the technology in existence at the time of enactment. Rather, it is far more congruous with the traditions of reasonable statutory construction for the judiciary to pay heed to legislative intent devined from the Legislature’s use of broad language in defining visual materials. The better course is to allow the Legislature to clarify its elastic definitions when it deems clarification to be appropriate. Were courts to follow the path designed by the defendant, the result would be that every technological advance could not be recognized by a court without benefit of a legislative response in the nature of a special statutory amendment. Commonwealth v. Kelly, Cr. No. 102170-72 (Plymouth Super. Ct. March 26, 2001) (12 Mass. L. Rptr. 717). This, the Court declines to do. The motion to dismiss on McCarthy grounds, will be denied.
2. Constitutionality of Massachusetts child pornography laws
An essential principle of due process is that a statute may not proscribe conduct “in terms so vague that men of common intelligence must necessarily guess at its meaning.” Commonwealth v. Sefranka, 382 Mass. 108, 110 (1980) (citations omitted). A law is not vague if its meaning is ascertainable by reference to similar or related statutes or if the questioned terms have a commonly understood meaning. See Commonwealth v. King, 374 Mass. 5, 12-13 (1977); Commonwealth v. Jarrett, 359 Mass. 491, 496-497 (1971). In Commonwealth v. 707 Main Corp., 371 Mass. 374 (1976), the Supreme Judicial Court held that the dissemination statute “is not unconstitutionally vague in its proscription of dissemination of obscene matter, because its definitions of ‘obscene’ matter and ‘sexual conduct’ . . . provide reasonably ascertainable standards of guilt." Id. at 383. G.L.c. 272, §31 provides extensive definitions of the terms “nudity,” “sexual conduct,” “dissemination” and “visual material.” This Court is confident that an individual of common intelligence would understand that the dissemination, with the required mens rea, of visual images depicting children in a state of nudity or sexual conduct by e-mail is violative of Massachusetts’ child pornography laws. Thus, the statutes under which the instant indictments are laid do not offend the defendant’s rights under the First Amendment to the United States Constitution or Article Sixteen of the Massachusetts Declaration of Rights. Insofar as defendant’s motion seeks dismissal because the foundation law is “void for vagueness,” the motion will be denied.
3. Motion to suppress
The defendant challenges the validity of the search warrant, by which the Commonwealth acquired certain evidence, on four fronts. He argues that: (1) there was insufficient evidence presented to the magistrate to establish probable cause to issue the warrant; (2) there was no temporal proximity between the events constituting probable cause and the issuance of the warrant; (3) there was an insufficient nexus between the defendant, the places to be searched and the items to be seized; and (4) the warrant was an impermissible general warrant, which failed to describe with particularity the items to be seized. Our analysis will proceed from the proposition that, when challenging a search conducted pursuant to a search warrant, the defendant has the burden of showing that the evidence was illegally obtained. Commonwealth v. Taylor, 383 Mass. 272, 280 (1981).
(a) Probable cause sufficient to issue search warrant
In order to establish the absence of probable cause, the defendant must demonstrate that the affidavit failed to “contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched.” Commonwealth v. Cejalo, 381 Mass. 319, 328 (1980). Probable cause requires more than mere suspicion of criminal involvement, but less than that required to demonstrate, prima Jade, the commission of a crime or to warrant aconviction. Commonwealth v. Spano, 414 Mass. 178, 184 (1993). In reviewing the warrant application to determine whether probable cause to issue the warrant existed, the court should read the affidavits as a whole, in an ordinary, common-sense manner, and should not subject the writings to hypertechnical analysis. Commonwealth v. Blake, 413 Mass. 823, 827 (1992); Commonwealth v. Melendez, 407 Mass. 53, 60 (1990). Only the facts revealed within the four corners of the affidavit, and any reasonable inferences to be *589 drawn from those facts, may be considered by the reviewing court in its disposition of the motion to suppress. Commonwealth v. Allen, 406 Mass. 575, 578 (1990).
In the present case, the issuing magistrate had at his disposal a twenty-two page affidavit composed by a Massachusetts State Police Officer who was directly involved in the investigation. The affidavit detailed the defendant’s alleged contact with an undercover police detective from Keene, New Hampshire. It further detailed the joint investigation conducted by the Massachusetts State Police and an officer from Rehoboth, Massachusetts. The investigation revealed that the e-mail and “chat” transmissions were being conducted by an individual at the defendant's address. The affidavit further detailed the transmissions alleged to be criminal and recited that, when the transmitter was on-line, the computer at the defendant’s residence was in use, and when the transmitter was off-line, the defendant’s computer was not in use. Based on the thoroughly detailed affidavit which particularized the operative facts, along with the reasonable inferences that can be drawn therefrom, this Court concludes the affidavit contained sufficient information for the issuing magistrate to determine that the affidavit provided probable cause to believe that the items to be seized would be found in the place to be searched.
(b) Temporal proximity
The facts supporting probable cause must be “closely related to the time of the issue of the warrant so as to justify a finding of probable cause at that time.” Commonwealth v. James, 424 Mass. 770, 778-79 (1997). The nature of the alleged criminal activity is significant in determining the timeliness vel non of the issuance of the warrant. Id. at 779; Commonwealth v. Fleurant, 2 Mass.App.Ct. 250, 254-55 (1974). If an affidavit evidences activities describing protracted and continuous conduct, the passage of time between the activities and the issuance becomes less significant. Commonwealth v. Vynorius, 369 Mass. 17, 25 (1975). An important factor in demonstrating continuity is the number and quality of observations that suggest a continuing criminal activity. Commonwealth v. Rice, 47 Mass.App.Ct. 586, 590, cert denied 430 Mass. 1107 (1999) (citations omitted).
At bar, the application and accompanying affidavit reflect that approximately four months had passed from the time of the last e-mail transmission until the time of the issuance of the warrant. The affidavit also revealed, however, that, for a three-to four-month period, an individual had been communicating with his victim via e-mail, on-line chat rooms and computer images of children in a state of nudity and sexual conduct. The communications were indisputably continuous, thus permitting the reasonable inference that their existence persisted. The period of time from the day of the last e-mail transmission to the issuance of the warrant was of sufficient proximity to justify the magistrate in finding that probable cause to believe evidence of a crime existed at the time the warrant was issued. See Commonwealth v. Burt. 393 Mass. 703, 716 (1985) (information not stale where affidavit described conspiracy to steal parking meter receipts over a five-month period); see also Commonwealth v. Pratt, 407 Mass. 647, 662 n. 14 (1990) (where affidavit detailed defendant’s recent and on-going drug related, activities information would not have been stale).
Additionally, the fact that the affidavit’s allegations concerned dissemination of child pornography via computer permitted the magistrate to issue a search warrant on information the timeliness of which might illegitimize a warrant for the seizure of other items. See e.g. Commonwealth v. Scanlan, 9 Mass.App.Ct. 173, 181 (1980) (ten-month and three-month-old informant’s tips not stale as items sought, sledge hammer and burglarious tools, had been used in continuous criminal activity and were not inherently incriminating); Commonwealth v. Blye, 5 Mass.App.Ct. 817, 818 (1977) (four-month-old informant’s tip not stale where items sought, stolen chain saws, were likely to remain at premises longer than other types of contraband and warrant described ongoing criminal activities); Commonwealth v. Fleurant, 2 Mass.App.Ct. at 255 (unlike drugs or liquors, a collection of weapons is not likely to be consumed or destroyed). The affidavit described in detail how computer images may remain stored on either the electronic storage device (the hard drive) or various other magnetic storage devices. The affidavit also detailed how individuals who possess and disseminate visual images depicting sexual activity involving children are likely to retain these visual images for long periods of time. See State v. Jannetta, 355 N.W.2d 189, 194 (Minn.App. 1984) (a pornography collection might reasonably remain in the possession of a pedophile for two years). At bar, the circumstances described by the affidavit provided the magistrate with reason to conclude that the passage of time did not constitute a disabling tardiness. Moreover, it would be discordant for the law to require police officials to present detailed affidavits showing a nexus between the defendant and a crime that lacks conventional substance — here the dissemination of child pornography via e-mail — and then not to allow law enforcement a reasonable time prior to seeking a warrant to determine the identity of the individual responsible for the somewhat amorphous dissemination. Therefore, this court concludes that the magistrate had probable cause, based on the information in the affidavit, to believe that evidence of the crime was, at the time of issuance of the warrant, located at the place to be searched.
(c) Nexus between the defendant, the premises to be searched and the items to be seized
The Supreme Judicial Court has recently observed that “the nexus between the items to be seized and the place to be searched need not be based on direct *590 observations . . . [but] . . . |t]he nexus maybe found in 'the type of crime, the nature of the missing items, the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [evidence of the crime].’ ” Commonwealth v. Donahue, 430 Mass. 710, 712 (2000) (citations omitted). The evidence required to justify issuance of a warrant need not be beyond a reasonable doubt, but it must provide a substantial basis for concluding that evidence connected to the crime is probably be located on the specified premises. Id.
At bar, the affidavit described a lengthy investigation, the results of which determined that a computer located at the defendant’s residence and an e-mail account registered to the defendant were being used to disseminate child pornography to a police detective posing as a fourteen-year-old boy. Further, the affidavit described how individuals involved in such conduct were likely to retain depictions of the visual images they had disseminated and that the depictions were likely to be stored within the disseminator’s computer or on various other magnetic storage devices that were probably also located at the premises. Based on this information the magistrate had probable cause to believe that the defendant was the individual who had sent the images to the detective in New Hampshire and that evidence of his criminal activity was probably located at the premises named in the warrant.
(d) The particularity requirement
The Fourth Amendment to the United States Constitution requires that warrants “particularly describ[e] the place to be searched, and the persons or things to be seized.” Article Fourteen of the Massachusetts Declaration of Rights requires warrants to be “accompanied with a special designation of the persons or objects of search, arrest, or seizure.” Additionally, G.L.c. 276, §2, provides that search warrants “shall particularly describe the property or articles to be searched for.” Each source of law is, plainly, concerned that the permission to search be grounded on, and cast in the form of, expressions of “particularity.”
The particularity requirement protects against general exploratory searches of an individual’s belongings by law enforcement officers. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). “[I]t both defines and limits the scope of the search and seizure, thereby protecting individuals from general searches . . .” Commonwealth v. Pope, 354 Mass. 625, 629 (1968). Particularity is not, however, a static concept. As noted by the Supreme Judicial Court, “[t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." Commonwealth v. Freiberg, 405 Mass. 282, 298 (1989), quoting United States v. Johnson, 541 F.2d 1311, 1314 (8th Cir. 1976).
In the present case, the warrant directed the executing officer to seize the defendant’s computer systems; the warrant listed a number of items — to wil, input devices, output devices and data storage and retrieval devices — that were to be seized. The seized property was to be taken to a secure location and examined for what the warrant narrowly described, in the language of the statute, as visual images depicting children in a state of nudity or sexual conduct. The warrant specifically referenced the sexually explicit images that were sent to the undercover police detective during the investigation.
Despite that limiting language, the defendant contends that his computer and storage devices largely contained personal, non-incriminating files, wholly distinct from child pornography, and thus the warrant authorizing the search, seizure and subsequent examination overreaches the legitimate objectives of the Commonwealth. Courts have held, however, that, where the commingling of legitimate and illegitimate items makes an on-site examination impracticable, a temporary seizure of the whole is permitted. See United States v. Hargus, 128 F.3d 1358, 1363 (10th Cir. 1997), cert. denied, 523 U.S. 1079 (1997) (seizure of file cabinets permitted); United States v. Slocum, 708 F.2d 587, 605-06 (11th Cir. 1983) (seizure of file folder commingling innocent and incriminating material); United States v. Johnson, 709 F.2d 515, 516 (8th Cir. 1983) (officers removed safe to be opened at the station after its owner refused to divulge the combination). Similarly, in the instant matter, the nature of computer and data storage permits, as a matter of reasonable necessity, an on-site seizure followed by an off-site examination, with, of course, the corollary that non-incriminating material be returned promptly. See United States v. Hersch, 1994 WL 568728, *1 (D.Mass. 1994) (warrant describing all computer equipment was not general search due to the nature of computer equipment and hardware).
The affidavit at bar suggested that the defendant was possessing and disseminating child pornography from his computer located at his residence. The investigators could not have known in what form — whether on the computer hard drive or other various storage devices — the defendant was storing the target images. To insulate such images from search and seizure merely because other, non-incriminating items may have sheltered the images would pervert the accepted purpose of the constitutional bar against general searches. Thus, the instant warrant, authorizing seizure of the computer and data storage devices within the defendant's residence for the purpose of examining those devices for evidence of the crime, was reasonably related to the probable cause recited by the affidavit, did not authorize a general search, and does not fail for want of particularity.
ORDER
It is therefore ORDERED that the defendant’s motion to dismiss the indictments under G.L.c. 272, *591 §29B, for lack of sufficient evidence presented to the grand jury in support of the indictments, be DENIED.
It is therefore ORDERED that the defendant's motion to dismiss the indictments under G.L.c. 272, §29B, for a violation of his rights under the First Amendment to the United States Constitution and Article Sixteen of the Massachusetts Declaration of Rights, be DENIED.
It is therefore ORDERED that the defendant’s motion to suppress all the evidence seized from his home on June 14, 2000, be DENIED.

 General Laws c. 272, §29B(a) provides:
Whoever, with lascivious intent, disseminates any visual material that contains a representation or reproduction of any posture or exhibition in a state of nudity involving the use of a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished in the state prison . . .

 General Laws c. 272, §29B(b) provides:
Whoever with lascivious intent disseminates any visual material that contains a representation or reproduction of any act that depicts, describes, or represents sexual conduct participated or engaged in by a child who is under eighteen years of age, knowing the contents of such visual material or having sufficient facts in his possession to have knowledge of the contents thereof, or whoever has in his possession any such visual material knowing the contents or having sufficient facts in his possession to have knowledge of the contents thereof, with the intent to disseminate the same, shall be punished in the state prison . . .

 General Laws c. 272, §31 defines “Visual Material” as:
any motion picture film, picture, photograph, videotape, any book, magazine, or pamphlet that contains pictures, photographs or similar visual representations or reproductions. Undeveloped photographs, pictures, motion picture films, videotapes and similar visual representations or reproductions may be visual materials notwithstanding that processing, development or similar acts may be required to make the contents thereof apparent.

 In fact, when enacting the possession statute, the Legislature elected not to adopt the same definitions as used in the dissemination statute, but instead adopted different definitions of visual material and sexual conduct. That legislative choice further suggests that Section 29C provides little guidance in determining what is included within the definitions of Section 29B.