## Commonwealth *vs.* Stephen M. O'Connell.

Plymouth. October 6, 2000. - November 20, 2000.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Practice, Criminal,* Conduct of prosecutor, Argument by prosecutor, Indictment, Bill of particulars. *Child Abuse. Firearms.*

At the trial of a criminal case, certain comments of the prosecutor in closing argument were reasonable inferences from the evidence [658-660]; and a statement by the prosecutor that was not supported by the evidence did not constitute reversible error in the context of the entire argument, the evidence at trial, and the judge's instructions to the jury [660].

In a criminal case involving sexual abuse of a child, the omission of the victim's name from the indictments did not prejudice the defense, where the defendant could not have been prejudicially surprised by the Commonwealth's theory that the victim was the defendant's niece in light of the bill of particulars referencing extensive testimony of the child's identity in the grand jury minutes. [660-661]

Evidence at the trial of indictments alleging sexual abuse of a child was sufficient to warrant the conclusion that the defendant knew or had reason to know the victim was under eighteen years of age. [661-663]

In a prosecution for possession of a sawed-off shotgun, the Commonwealth was not required to prove that the defendant knew that the weapon in his possession had a barrel less than the statutory eighteen-inch limit. [663]

Indictments found and returned in the Superior Court Department on April 5, 1996.

The cases were tried before *Wendie I. Gershengorn,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Gregory M. Doyle* for the defendant.

*Michael H. O'Connell,* Assistant District Attorney, for the Commonwealth.

Ireland, J. A grand jury returned indictments charging the defendant with (1) posing or exhibiting a child in a state of nudity (G. L. c. 272, § 29A); (2) indecent assault and battery on a child under fourteen years of age (G. L. c. 265, § 13B); and (3) unlawful possession of a sawed-off shotgun (G. L.

c. 269, § 10 [c]). On March 5, 1998, a jury convicted the defendant on all three indictments. On appeal, the defendant contends that prosecutorial misconduct and insufficient evidence warrant reversal. In an order and unpublished memorandum pursuant to its rule 1:28, the Appeals Court affirmed the convictions. *Commonwealth* v. *O'Connell*, 48 Mass. App. Ct. 1113 (1999). We granted the defendant's application for further appellate review. We affirm the judgments of conviction.

1. *Facts.*

On September 28, 1995, Bonnie Jean Brault, the defendant's wife, discovered two photographs, one of which depicted a man's arm touching the genital area of a young female. Brault identified the arm in the inculpatory photograph as her husband's, and the female in the photograph as the defendant's then eight year old niece.[1] Brault also identified certain details from the photograph, such as the couch, a sheet, her niece's blanket, and her husband's bathrobe. After showing the photograph to the niece's mother, Brault brought the photograph to the police who subsequently searched the defendant's home. The search revealed a sawed-off shotgun measuring one-quarter inch less than the legal limit.

At trial, three sorts of photographs were entered in evidence. The Commonwealth first introduced the photograph depicting the victim and the perpetrator's arm (inculpatory photograph). Then, for comparison purposes, the Commonwealth introduced various photographs depicting the defendant (and his arm) taken years prior to the arrest (prearrest photographs), and those photographs of the defendant (and his arm) taken by the police after his arrest (postarrest photographs). The Commonwealth employed the prearrest and postarrest photographs to exhibit the distinctive contour and hairiness of the defendant's arm. The Commonwealth also produced an expert in female genital development who testified that, based on the features depicted in the inculpatory photograph, the subject was under the age of eleven and one-half years. The defendant denied the allegations and accused his wife of manufacturing the evidence in order to retain custody of their son.

2. *Prosecutorial Misconduct.*

a. *The prosecutor's closing argument.* The defendant contends that the prosecutor's closing argument twice referred to facts

---

[1]The female's face was concealed.

not supported by the evidence.[2] The defendant objected to this line of argument. Thus, "[w]ith respect to each challenge, we consider the prosecutor's remarks in the context of [the] entire argument, the evidence at trial, and the judge's instructions to the jury."[3] *Commonwealth* v. *Christian*, 430 Mass. 552, 564 (2000). See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987) (whether prosecutor's alleged error went to "heart of the case" or limited to collateral issues bears on propriety of closing argument).

First, the defendant claims that the prosecutor's suggestion that the defendant "did something" to change the appearance of his arm was improper. To the extent differences existed between the arm depicted in the inculpatory photograph and the defendant's arm as depicted in prearrest and postarrest photographs, contrary explanations were offered. The defendant claimed the dissimilarities proved he had no part in the criminal act, that the arm in the inculpatory photograph was not his. The prosecution countered that the defendant altered the appearance of his arm in an attempt to conceal his culpability. Although a hair and fiber analyst confirmed that the defendant's arm hair had been neither cut nor dyed, she could not necessarily rule out the use of a "depilatory like Nair."

"We have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and *on inferences that may be reasonably drawn from the evidence*" (emphasis added).

---

[2]In her closing argument, the prosecutor invited the jury to compare the prearrest and postarrest photographs and stated: "Are they the same arms? I suggest not, ladies and gentlemen. When he found out that *he had to come* and he had to get his arms photographed, he did something. You heard the expert. He didn't cut it. He didn't dye it. *But he did something*. And I asked her, 'If a person uses a depilatory like Nair . . . would you have noticed anything on examination under the microscope?' 'No.' I asked her about shaving. 'Not necessarily.' Use your common sense ladies and gentlemen. Look at the photograph prior. Look at the photograph after. *I suggest the only conclusion is something happened.*" (Emphases added.)

[3]"Extraevidentiary remarks in closing arguments are normally adequately neutralized by a timely curative instruction and a general reminder that arguments of counsel are not evidence." *Commonwealth* v. *Giguere*, 420 Mass. 226, 234 (1995), and cases cited. In light of the judge's repeated instructions that the closing arguments do not constitute evidence, any damage to the defendant was sufficiently repaired. *Commonwealth* v. *Thornley*, 400 Mass. 355, 359 (1987), *S.C.*, 406 Mass. 96 (1989) (any impropriety during final arguments adequately remedied through judge's instruction to jury). See *Commonwealth* v. *Haskins*, 411 Mass. 120, 122 (1991).

*Commonwealth* v. *Lawrence*, 404 Mass. 378, 391-392 (1989), quoting *Commonwealth* v. *Pontes*, 402 Mass. 311, 315 (1988) (no finding of improper argument where evidence warranted inference). *Commonwealth* v. *Olszewski*, 416 Mass. 707, 726 (1993), cert. denied, 513 U.S. 835 (1994). Given the defendant's stance that the apparent differences between the prearrest and postarrest photographs prove the arm was not his, the Commonwealth's comments were reasonably "within the prosecutor's right of retaliatory reply." *Commonwealth* v. *LeFave*, 407 Mass. 927, 939 (1990), quoting *Commonwealth* v. *Prendergast*, 385 Mass. 625, 633 (1982). There was no error. See *Commonwealth* v. *Good*, 409 Mass. 612, 626 (1991) (prosecutor's argument, including consciousness of guilt, proper given reasonable inference from evidence.)

Second, the prosecutor's statement that the defendant "had to get his arms photographed" is not supported by the record. Rather, it appears the defendant voluntarily consented to the photographing. Although this inaccuracy is regrettable, it does not constitute reversible error in the entire context of this case.[4] *Commonwealth* v. *Cosme*, 410 Mass. 746, 755 & nn. 6, 7 (1991) (minor "misstatements" and "mischaracterizations" did not warrant reversal). See *Commonwealth* v. *Shea*, 401 Mass. 731, 735 (1988). See also *Commonwealth* v. *Thomas*, 400 Mass. 676, 683 (1987) (no reversal for prosecutor's "slip of the tongue" where judge instructed jury that closing arguments not evidence).

b. *Omission of victim's name on indictment.* The defendant contends that it was prejudicial error for the Commonwealth to assert that the victim was the defendant's niece where the underlying indictments referred only to an unnamed "child." However, "a defendant is not to be acquitted on the grounds of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defense." *Commonwealth* v. *Grasso*, 375 Mass. 138, 139 (1978). Here, the name of the victim is not an essential element of the crime. G. L. c. 277, § 35 ("immaterial misnomer of third party" does not warrant acquittal). Cf. *Commonwealth* v. *Ohanian*, 373 Mass. 839, 843 (1977). Furthermore,

---

[4]We note that, had the defendant not submitted voluntarily to the photographing of his arm, a judge surely could have ordered it. Given that possibility, the prosecutor's statement that the defendant "had to get his arms photographed," is less damaging.

the defendant cannot claim prejudice. The grand jury minutes repeatedly referred to the defendant's niece (and only remotely suggested another possible victim). A number of factors strongly suggest that the defendant had sufficient notice of the Commonwealth's theory that it was his niece in the inculpatory photograph. Prior to any legal proceedings, the defendant learned of the inculpatory photograph and its content from his sister. More than two years prior to trial, the grand jury heard extensive testimony as to the identity of the girl in the inculpatory photograph. The defendant's wife and foster daughter claimed it was the defendant's niece, although the niece's parents disagreed emphatically. Moreover, the defendant's opening argument explicitly countered the Commonwealth's "niece" theory. See *Commonwealth* v. *Whitehead*, 379 Mass. 640, 649 (1980). Absent a showing that the Commonwealth's theory surprised the defendant to his prejudice, the convictions stand. See *Commonwealth* v. *Hobbs*, 385 Mass. 863, 871 (1982) (no prejudice where defendant "could not have been surprised" by variance); *Commonwealth* v. *Whitehead, supra* at 647 (no prejudice absent "persuasive contention . . . that the defendants were surprised by a development at trial").[5]

The defendant's claim that the bill of particulars failed to provide adequate notice of the charges fails for similar reasons. Although the bill of particulars omitted any reference to the defendant's niece, it placed the alleged conduct in a narrower time frame than the indictment and directed the defendant's attention to the "Grand Jury minutes [and] police reports," thereby providing adequate notice. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 233-234 (1989); *Commonwealth* v. *Tavares*, 385 Mass. 140, 157, cert. denied, 457 U.S. 1137 (1982). Cf. *Commonwealth* v. *Crawford*, 429 Mass. 60, 68-70 (1999) (improper for Commonwealth to pursue conviction on murder theory other than that set forth in bill of particulars).

3. *Knowledge of Victim's Age.*

In order to convict a defendant of posing or exhibiting a child

---

[5]The defendant's reliance on *Commonwealth* v. *DiStasio*, 294 Mass. 273, 277-279 (1936), is misplaced. In *Commonwealth* v. *DiStasio, supra* at 278, we held the Commonwealth's amendment of an indictment was not error where the "amendment did not change the substance of the crime charged" and still "required the defendant to answer for the murder of a particular man and no other." Given the unamended indictments in the case before us and the notice provided to the defendant, *DiStasio* is inapposite.

in a state of nudity, the Commonwealth must prove that the defendant had "knowledge that [the victim] is a child under eighteen years of age or [was] in possession of such facts that he should have reason to know that such person is a child under eighteen years of age." G. L. c. 272, § 29A. Notwithstanding expert testimony that the girl in the inculpatory photograph was "in all likelihood under eleven and a half [years old], probably younger than that,"[6] the defendant contends that the Commonwealth failed to prove he *knew* the victim was under eighteen years of age. Because the defendant's motion for required findings of not guilty encompassed this argument we consider "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences . . . and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Stewart*, 411 Mass. 345, 349-350 (1991), quoting *Commonwealth* v. *Clary*, 388 Mass. 583, 588-589 (1983). Adhering to these principles, the record supports the conclusion that the defendant knew or had reason to know the victim's age.

The jurors could reasonably have inferred that the girl depicted in the inculpatory photograph was the defendant's niece. Such a conclusion is supported by the presence of the niece's blanket in that photograph. The defendant's sister testified that her daughter (i.e., the defendant's niece) had "several fluffy, woollyish blankets," including a "special" one that she mistakenly left at the defendant's home when she visited in August, 1995. One Commonwealth witness added that the girl "carried it with her everywhere she went." Where two witnesses identified the girl's "special" blanket in the inculpatory photograph, the jury could have inferred that the victim was in fact the defendant's niece. On the basis of this circumstantial evidence, the additional inference that the defendant knew or should have known his eight year old niece was younger than eighteen years was similarly warranted.

Even if the jury concluded the victim was someone other the defendant's niece, the defendant's constructive knowledge of the age of the victim could be gleaned from the inculpatory photograph itself. Based on certain physical characteristics

---

[6]The niece was eight years old in August, 1995, the time of the alleged incident.

observable from that photograph, the Commonwealth's expert concluded that the victim was "in all likelihood under eleven and a half [years old], probably younger than that." Physical appearance may be considered as a factor in discerning age. *Commonwealth* v. *Pittman*, 25 Mass. App. Ct. 25, 27 (1987), citing *Commonwealth* v. *Emmons*, 98 Mass. 6, 8 (1867). Because, "judging age on physical appearance is a guess and a guess is not a basis for sending someone to jail," the finder of fact may rely entirely on physical appearance to determine age only in cases involving "marked extremes of old age and youth." *Commonwealth* v. *Pittman*, *supra* at 28. Here, the difference between the sexual development manifested by, at most, an eleven and one-half year old girl (as per the expert's opinion) and that of the statutorily prescribed eighteen year old is sufficiently "extreme" to sustain the Commonwealth's burden.

4. *Knowing Possession of Illegal Sawed-off Shotgun.*

While searching the defendant's home, the police found a sawed-off shotgun with a barrel measuring seventeen and three-quarters inches. General Laws c. 269, § 10 (*c*), prohibits the possession of a sawed-off shotgun, defined in G. L. c. 140, § 121, as "any weapon made from a shotgun . . . if such weapon as modified has one or more barrels less than 18 inches in length." Based on the measurements, the grand jury returned an indictment that defendant "did knowingly and unlawfully own, possess or carry on his person a SAWED-OFF SHOTGUN . . . without being the holder of a valid license to carry firearms." At trial, the jury convicted him of the charge. The defendant contends that the conviction is not warranted without proof that he "knew" the weapon was shorter than the statutory limit.

Although knowledge is an essential element of each crime, *Commonwealth* v. *Bennefield*, 373 Mass. 452 (1977), the Commonwealth need not prove that the defendant knew that the physical characteristics of the firearm he possessed (such as barrel length) rendered it subject to regulation. *Commonwealth* v. *Sampson*, 383 Mass. 750, 762-763 & n.16 (1981). See *Commonwealth* v. *Bacon*, 374 Mass. 358, 360-361 (1978) (contrasting scienter in gun and obscenity cases). *Commonwealth* v. *Papa*, 17 Mass. App. Ct. 987, 987-988 (1984). Where, as here, the jury could have inferred that the defendant knew a particular

firearm was in his possession, his ignorance vis-à-vis that firearm's dimensions is not a valid defense.

*Judgments affirmed.*