COMMONWEALTH vs. STEVEN E. KENNEY, Jr.

Worcester. September 4, 2007. - October 19, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Search and Seizure,* Probable cause, Computer. *Constitutional Law,* Search and seizure, Probable cause, Freedom of speech and press. *Probable Cause. Statute,* Construction. *Due Process of Law,* Vagueness of statute. *Obscenity,* Child pornography. *Words,* "Depiction by computer," "Simulation."

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence of computer images depicting children in a state of nudity or engaged in sexual conduct, which were contained in files stored on the hard drive of the defendant's computer and on electronic storage disks, where a State trooper's ten-page affidavit supporting the warrant to search the defendant's apartment (where the computer and disks were seized) established probable case to believe that child pornography would be found there. [845-847]

Discussion of United States Supreme Court decisions enunciating clear guidelines for the application of the First Amendment to the United States Constitution to the category of child pornography. [847-849]

This court concluded that the statute criminalizing the purchase or possession of child pornography, G. L. c. 272, § 29C, was not impermissibly vague, where the challenged phrase "depiction by computer" could not reasonably be interpreted to mean images created without the use of real children, and where the term "simulation" as set forth in that statute was not ambiguous. [850-853]

The Legislature's choice not to provide an exemption for artistic or scientific materials in the statute criminalizing the purchase or possession of child pornography, G. L. c. 272, § 29C, did not invalidate that statute as unconstitutionally overbroad, where the statute was sufficiently explicit to give notice as to the proscribed conduct and did not prohibit a substantial amount of protected expression. [854-855]

This court confirmed the constitutionality of the scienter requirement in the statute criminalizing the purchase or possession of child pornography, G. L. c. 272, § 29C, pursuant to which the Commonwealth must prove, in a prosecution under the statute where the defendant's actual or constructive knowledge of a child's age is disputed, that no reasonable person would not have known that the child subject was under the age of eighteen. [855-858]

INDICTMENT found and returned in the Superior Court Department on January 17, 2003.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke*, J., and the case was tried before *Francis R. Fecteau*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Robert F. Shaw, Jr.*, for the defendant.

*Michelle R. King*, Assistant District Attorney, for the Commonwealth.

*Claudia Leis Bolgen*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GREANEY, J. A jury in the Superior Court convicted the defendant, Steven E. Kenney, Jr., on an indictment charging possession of child pornography, in violation of G. L. c. 272, § 29C.[1] Prior to trial, the defendant moved to suppress approximately 323 computer images depicting children in a state

---

[1] General Laws c. 272, § 29C, reads in relevant part:

"Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is:

"(i) actually or by simulation engaged in any act of sexual intercourse with any person or animal;

"(ii) actually or by simulation engaged in any act of sexual contact involving sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal;

"(iii) actually or by simulation engaged in any act of masturbation;

"(iv) actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal;

"(v) actually or by simulation engaged in any act of excretion or urination within a sexual context;

"(vi) actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or

"(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child;

of nudity, or depicting children engaged in sexual conduct, which were contained in files stored on the hard drive of his computer, and on electronic storage disks, seized by police during a search of his apartment. Following an evidentiary hearing, a judge in the Superior Court denied the motion to suppress. In this appeal (here on our granting the defendant's application for direct appellate review) the defendant claims that probable cause did not exist to support the issuance of a warrant to search his apartment. Alternatively, the defendant challenges his conviction on the ground that G. L. c. 272, § 29C, is overbroad, vague, and ambiguous, and hence unconstitutional on its face. We conclude that the motion to suppress was properly denied and affirm the judgment of conviction.

The defendant in his appellate brief concedes that images seized from his home meet the core definition of child pornography under G. L. c. 272, § 29C. We need not, therefore, recite the facts of this case as the jury might have found them based on the Commonwealth's evidence. With respect to the defendant's motion to suppress, the judge found the facts as summarized below. All of the findings are supported by the evidence that the judge found credible, and we accept them.[2] See *Commonwealth* v. *Sparks*, 433 Mass. 654, 656 (2001), and cases cited.[3] In early January of 2002, Alexandria Tardif contacted the Massachusetts State police with concerns related to

with knowledge of the nature or content thereof shall be punished
      . . . .

"  . . .

"The provisions of this section shall not apply to a law enforcement officer, licensed physician, licensed psychologist, attorney or officer of the court who is in possession of such materials in the lawful performance of his official duty. Nor shall the provisions of this section apply to an employee of a bona fide enterprise, the purpose of which enterprise is to filter or otherwise restrict access to such materials, who possesses examples of computer depictions of such material for the purposes of furthering the legitimate goals of such enterprise."

[2] We reject the defendant's objection (raised in a footnote of his brief) that two of the judge's findings imprecisely relate details contained in the affidavit. The minor discrepancies in wording pointed out by the defendant are of no consequence.

[3] We do review independently, however, the judge's application of constitutional principles to the facts found. See *Commonwealth* v. *Eckert*, 431 Mass. 591, 592-593 (2000).

the defendant's possession of child pornography. On January 14, 2002, during an interview with Trooper Thomas R. Ryan, Tardif identified herself and related that she had a past relationship with a person she had met "on-line who goes by the name Steven Kenney." Tardif informed Trooper Ryan that she had once visited the defendant's home at 230 Westminster Hill Road, apartment 2, in Fitchburg, and had seen a computer there. Tardif also stated that, on December 27 and December 28, 2001, using the electronic mail (e-mail) address ("bocult@hotmail. com") and password ("Excalibur") the defendant had given her, Tardif gained access to the defendant's e-mail account. She told Trooper Ryan that she opened several of the defendant's e-mails, including one with an attached "video clip" showing a male performing oral sex on a six to eight year old girl. Tardif further provided Trooper Ryan with three e-mails (which she had printed) that were sent to the "bocult@hotmail.com" address in January, 2002.[4] Tardif also reported that the defendant maintained a second e-mail address named "bocmastr@gis. net." She told Trooper Ryan that the registration plate on the defendant's automobile read "BOCULT." Tardif also described to Trooper Ryan the defendant's apartment and physical appearance.

Based on the information given by Tardif, Trooper Ryan and

---

[4]According to the judge's findings, the first message, sent from "lustteacher@yahoo.com" on January 2, 2002, at 6:03 A.M. Pacific Standard Time, was a reply to an earlier message sent by "bocult@hotmail.com." The defendant's original message read:

"Sounds like you brought in the New Year right . . . I would love to have seen your 8 year old doing the faggit . . . did she do well? Anyways, I have another whore for you. Marge is her name. Her profile is margomoon39 on yahoo. Her e-mail is margomoon@webtv.net. She has yours so you should be writing to this whore soon. She is perfect . . . sleeping with children, jissing and pissing down them . . . hmmmmmm. Lustfully, Step son."

Another message Tardif viewed was sent by "margomoon@webtv.net" to "bocult@hotmail.com" on January 3, 2002, at 6:19 A.M., Eastern Standard Time, and read:

"Oh I would love to bed Mary and her kids, especially the young ones. The youngest I had sex with was a girl and boy twins both 11°[years old]. I met them through another boy I picked up in June 2001. His name is Randy and at that time he was 13 [years old] and the twins were 11 [years old]. They all had birthdays and Pete and I bed them still. Not as much as previously as they are back in school . . . . I can't wait to receive more hot kiddy and family-kiddy pics as well as kiddy pee pics. Love, Marge XXXOOO."

other State troopers commenced an investigation of the defendant. Pursuant to a grand jury subpoena issued on January 28, 2002, the Internet mail service known as "Hotmail" provided Trooper Ryan with information that the user profile of the screen name "bocult@hotmail.com" included the first name "Steve," a state of residence as "Massachusetts," and a zip code of "01453."[5] Hotmail also informed Trooper Ryan that the e-mail address had been accessed on December 27 and 28, 2001, from Oxford Instruments and Galaxy Internet Service (GIS), which are, respectively, the defendant's place of employment and Internet service provider. Pursuant to another subpoena, this one served on June 25, 2002, GIS confirmed that "bocmastr@gis.net" was an active e-mail account owned by Steven E. Kenney, Jr., of 230 Westminster Hill Road, apartment 2, in Fitchburg. GIS also informed Trooper Ryan that the password to that account was "excalibu." State police observed a motor vehicle bearing the registration plate "BOCULT" parked in the driveway of 230 Westminster Hill Road, and confirmed that photographs provided by Tardif were consistent with the photograph on the defendant's driver's license.

In June, 2002, State police obtained a warrant to search the defendant's apartment and to seize sexually explicit visual images, whether on paper or its equivalent or stored on electronic or magnetic media, any computer file text, any computer data file containing sexually explicit visual images the dissemination, purchase, or possession of which is specifically prohibited by G. L. c. 272, §§ 29B and 29C, and seize and transport all computer systems to a secure location to search for any sexually explicit images, prohibited by §§ 29B and 29C, which may be stored, or referred to, in directories, subdirectories, files, or logs, therein. The warrant application was supplemented by a ten-page affidavit sworn to by Trooper Ryan. The search took place on June 25, 2002, and among other things, police seized the defendant's computer and eighty-six three and one-half inch electronic storage disks. When examined by a lieutenant in the State police forensic unit, the computer's hard drive was found to contain over forty images consistent with child pornography;

---

[5]The zip code for Fitchburg is 01420 and not 01453. We assign no importance to this unexplained disparity.

deleted file sections of the hard drive were found to contain twenty-five images consistent with child pornography; nine additional images consistent with child pornography were located in the unallocated space section of the hard drive; and each of fifteen three and one-half inch disks seized from the defendant's home contained multiple images consistent with child pornography. All of the images were submitted as exhibits for the jury to view.

1. We reject the defendant's claim that the affidavit supporting the issuance of the warrant to search his apartment failed to establish probable cause to believe that child pornography would be found there. "To establish probable cause to search, the facts contained in an affidavit, and reasonable inferences that may be drawn from them, must be sufficient for the magistrate to conclude 'that the items sought are related to the criminal activity under investigation and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.' " *Commonwealth* v. *Walker*, 438 Mass. 246, 249 (2002), quoting *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000). See *Commonwealth* v. *Robles*, 423 Mass. 62, 65-66 (1996), and cases cited. We give considerable deference to the magistrate's determination of probable cause. See *Commonwealth* v. *Walker, supra.*

We are satisfied that the material presented in the ten-page affidavit, when read as a whole and examined under settled standards, see *Commonwealth* v. *James*, 424 Mass. 770, 777-778 (1997); *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 757 (1986), establishes probable cause. The facts contained in the affidavit included (1) all of the information about the defendant (aforementioned in this opinion), as related by Tardif to Trooper Ryan six months earlier; (2) Tardif's description of the video clip that was attached to an e-mail sent to the defendant's Internet address; (3) Trooper Ryan's description of the printed e-mails sent to the defendant's Internet address; (4) all of the information received from Hotmail and GIS; (5) that the driver's license photograph of the defendant obtained from the registry of motor vehicles matched the photographs of the defendant provided by Tardif; (6) that a motor vehicle bearing the registration plate "BOCULT," was observed in the driveway of 230

Westminster Hill Road in Fitchburg and, according to records of the registry of motor vehicles, that plate was registered to the defendant, at the address given police by Tardif.

The affidavit also presented at length Trooper Ryan's extensive knowledge, learned from his six years of personal experience and training in the investigation of sexually related crimes and computer related crimes, and gleaned from other law enforcement officers, as to terminology, paraphernalia, and computer activities common to those involved with the sexual exploitation of others. According to the affidavit, those who are interested in sexual activity with children, or in sexually explicit visual images depicting children, are likely to keep such images secreted, but close at hand, as a means of attracting interest of new child victims, or as a means of arousing the possessor. The affidavit states: "These depictions tend to be extremely important to such individuals and are likely to remain in the possession of or under the control of such an individual for extensive time periods, perhaps a lifetime." Further, such depictions typically may be stored as data in a computer file, and even so-called "deleted" files or data may, in fact, often still be present on the computer's storage medium, and thus recoverable by law enforcement, for months, years, even decades. Specifically, Trooper Ryan attested to his belief, based on the facts known to him, as set forth in the affidavit, that the defendant had access to an e-mail account from his computer at 230 Westminster Hill Road, apartment 2, in Fitchburg, which had been used, and continued to be used, by the defendant to engage in the trading or possession of child pornography. We do not rely on Trooper Ryan's conclusion as to what the facts in the affidavit mean to him as "a talismanic formula," *Commonwealth* v. *DiAntonio*, 8 Mass. App. Ct. 434, 440-441 (1979), to provide probable cause where evidence to support such a finding is otherwise lacking. The magistrate, however, could reasonably rely on the inference drawn by a law enforcement officer experienced in the investigation of child pornography, that evidence of that crime would be found at 230 Westminster Hill Road, apartment 2, in Fitchburg. See *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert. denied, 444 U.S. 937 (1979). The judge properly denied the defendant's motion to suppress. See *United States* v. *Grant*, 218 F.3d 72,

73-74 (1st Cir.), cert. denied, 531 U.S. 1025 (2000) (warrant properly issued for defendant's home after screen name associated with the defendant showed Internet activity relating to child pornography). See also *United States* v. *Fabiano*, 169 F.3d 1299, 1302 (10th Cir.), cert. denied, 528 U.S. 852 (1999) (warrant issued for defendant's home after screen name linked to defendant appeared on child pornography "chat room" and defendant was sent two images of child pornography); *United States* v. *Hibbler*, 159 F.3d 233, 235 (6th Cir. 1998), cert. denied, 526 U.S. 1030 (1999) (warrant issued for defendant's home after e-mail sent from defendant's screen name was found during investigation of another person's e-mails, which included image of child pornography and spoke of trading child pornography).

2. We now consider the principal question to be resolved — whether our statute criminalizing the purchase or possession of child pornography, G. L. c. 272, § 29C, inserted by St. 1997, c. 181, § 2, is impermissibly vague or overbroad, or otherwise punishes an excessive range of constitutionally protected speech.[6] We do so for the first time and, if our answer is "yes," even though the defendant concedes that his conduct fell within the legitimate scope of the statute, his conviction cannot stand. This is so because, owing to the high value placed on protected expression, statutes that impose criminal penalties on constitutionally protected speech are strictly scrutinized, and a law prohibiting a substantial amount of protected expression is unconstitutional on its face. See *Houston* v. *Hill*, 482 U.S. 451, 459 (1987); *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612 (1973); *Commonwealth* v. *Provost*, 418 Mass. 416, 422-423 (1994). To hold otherwise would have a chilling effect on the exercise of rights protected by the First Amendment to the United States Constitution due to the threat of criminal sanctions imposed by a statute which, because of vagueness, ambiguity, or overbreadth, is susceptible of being applied to protected expression. See

---

[6]The defendant asserts that the statute is violative of both the First Amendment to the United States Constitution and art. 16 of the Massachusetts Declaration of Rights. Because the arguments presented in his brief pertain solely to the former, we consider his claim only in relation to the First Amendment. See *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 772-773 n.7 (2000).

*Schaumburg* v. *Citizens for a Better Env't,* 444 U.S. 620, 634 (1980); *Baggett* v. *Bullitt,* 377 U.S. 360, 372 (1964); *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 586-587 n.4 (1975).

Our task has been made simpler by two decisions of the United States Supreme Court setting clear guidelines for the application of the First Amendment to the category of child pornography: *New York* v. *Ferber,* 458 U.S. 747 (1982), and *Ashcroft* v. *Free Speech Coalition,* 535 U.S. 234 (2002). In *New York* v. *Ferber, supra,* the Court examined whether States could, within the framework of the First Amendment, regulate the dissemination of materials showing children engaged in sexual conduct, regardless whether the conduct was obscene in nature. *Id.* at 753. The Court recognized that a State's interest in "safeguarding the physical and psychological well-being of a minor" is "compelling," *id.* at 756-757, quoting *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 607 (1982), and, further, that States have a "compelling interest in prosecuting those who promote the sexual exploitation of children." *New York* v. *Ferber, supra* at 761. In cases involving child pornography, the Court reasoned, "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake," that States may constitutionally proscribe the production, and distribution, of child pornography, whether or not it depicts works of value. *Id.* at 761, 763-764. See *Osborne* v. *Ohio,* 495 U.S. 103, 111 (1990) (State "may constitutionally proscribe the possession and viewing of child pornography"). The *Ferber* Court held that child pornography was "unprotected speech subject to content-based regulation." *New York* v. *Ferber, supra* at 765-766 n.18. The Court recognized, however, that, as with all criminal statutes "in this sensitive area," the conduct prohibited must be "adequately defined by the applicable [S]tate law, as written or authoritatively construed." *Id.* at 764. The Court also cautioned that the scope of conduct penalized by a statute must not be overboard so as to encompass not only a "real, but substantial" amount of protected speech, "judged in relation to the statute's plainly legitimate sweep." *Id.* at 770, quoting *Broadrick* v. *Oklahoma, supra* at 615.

Twenty years later, in *Ashcroft* v. *Free Speech Coalition, supra,* the Supreme Court struck down certain provisions of the

Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2251 et seq. (2000). The CPPA extended the Federal prohibition against child pornography to so-called "virtual child pornography," or those sexually explicit images that appear to depict real children but which, in fact, are created using adults (who look like children) or through the use of computer imaging technology. The Court pointed to congressional findings indicating that new technology "makes it possible to create realistic images of children who do not exist." *Id.* at 240, 241. Because § 2256 (8)(B) of the challenged statute prohibited "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture" that "is, or appears to be, of a minor engaging in sexually explicit conduct," the Court observed that the statute could be read to encompass computer images that were not of real children; depictions of adults who only looked to be under eighteen years old; or "a Renaissance painting depicting a scene from classical mythology." *Id.* at 241. The Court reasoned that none of these images "involve, let alone harm, any children in the production process." *Id.* Section 2256 (8)(D) of the CCPA banned sexually explicit images that are "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" that they depict minors (whether or not, in fact, they actually do). The Court emphasized that "[t]he sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people" and reiterated the holding of its earlier *Ferber* decision, that the First Amendment right to freedom of expression does not embrace child pornography. *Ashcroft* v. *Free Speech Coalition, supra* at 244, 246. See *id.* at 246-248 (recognizing that many of the images prohibited by the statute, but not involving children, would survive the obscenity test announced in *Miller* v. *California*, 413 U.S. 15, 24 [1973]). In the end, however, the *Ashcroft* Court concluded that §§ 2256 (8)(B) and (D) of the statute abridged the freedom to engage in a substantial amount of lawful speech. For this reason, the Court held the statute to be overbroad and unconstitutional. See *id.* at 256, 258 ("The First Amendment requires a more precise restriction").

With the above principles in mind, we turn to the defendant's arguments that G. L. c. 272, § 29C, is unconstitutional.

a. The defendant first claims that G. L. c. 272, § 29C (set forth in note 1, *supra*), which punishes the knowing purchase or possession of a "negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer" of a child whom the person "knows or reasonably should know to be under the age of 18 years of age" and such child is portrayed as engaged in one of six acts of a sexual nature (enumerated in subsections [i] through [vi]) "actually or by simulation,"[7] is unconstitutionally vague. Specifically, the defendant argues that, because the statute lacks clear definition of the terms "depiction by computer" and "simulation," it fails to provide sufficient notice of what conduct will violate its provisions.[8] It is well established that due process requires criminal statutes that are not "sufficiently explicit to give clear warning as to proscribed activities" to be declared unconstitutional. *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). See *Commonwealth* v. *Fitta*, 391 Mass. 394, 395-396 (1984); *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117-118 (1980). Prohibited imprecision includes ambiguity in the terms in a criminal statute, especially one implicating the right to freedom of expression, that might give rise to arbitrary enforcement. See *Speiser* v. *Randall*, 357 U.S. 513, 525 (1958) ("the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn"). Any ambiguity in the terms of a criminal statute must be strictly construed against the Commonwealth. See *Commonwealth* v. *Ruiz*, 426 Mass. 391, 394 (1998). Even in the realm of the First Amendment, however, we are not limited to

---

[7]Subsection (vii) of the statute penalizes the purchase or possession of material depicting or portraying a child "in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child," but does not contain the term "simulation."

[8]The defendant also claims ambiguity in subsection (iv) of the statute prohibiting the possession of images portraying a child as "the object of . . . lewd . . . touching" or "caressing." Exactly what constitutes an object of lewd touching or caressing, according to the defendant, is "anyone's best guess." We need not guess. Touching that is "lewd" is commonly understood to be contact that is indecent or offensive. We reject the defendant's apparent claim that this provision of an otherwise explicit and detailed statute renders it unconstitutionally vague on its face.

the literal definition of the words as written by the Legislature: we also may consider any authoritative construction given by this court in the past. "[A] law is not vague [in the constitutional sense] if its meaning is ascertainable by reference to similar or related statutes . . . if the questioned [term has] a commonly understood meaning [or if] even a vague statute may be made constitutionally definite by giving it a reasonable construction." *Commonwealth* v. *Arthur*, 420 Mass. 535, 539 (1995), quoting *Commonwealth* v. *Sefranka, supra* at 111. See also *Blixt* v. *Blixt*, 437 Mass. 649, 652 (2002), cert. denied, 537 U.S. 1189 (2003); *Commonwealth* v. *Lammi*, 386 Mass. 299, 301 (1982) (court must presume every enactment of Legislature intended to comply with constitutional constraints).

We have previously examined the phrase "depiction by computer," as set forth in G. L. c. 272, § 29C, to determine whether evidence of child pornography stored in the form of data contained in an unopened file on a hard drive sufficed to convict a defendant under the statute. See *Commonwealth* v. *Hinds*, 437 Mass. 54, 63-64 (2002), cert. denied, 537 U.S. 1205 (2003). We concluded that it did. See *id.* at 64. We recognized in the *Hinds* case that the statute lists types of physically tangible media ("a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction") and stated, "[T]he Legislature's creation of a separate and distinct category for 'depiction by computer' manifests an intent to give special treatment to the unique issues presented by computers, including the fact that stored data, although intangible in their unprocessed form, are readily transferrable to a graphic image. Our reading comports with the Legislature's expressed design to eliminate permanent records of sexually exploitive material harmful to children. See St. 1997, c. 181, § 2. As such, 'depiction by computer' includes graphic computer images stored in the form of data." *Id.* at 63-64. See *Commonwealth* v. *Washburn*, 55 Mass. App. Ct. 493, 496 n.3 (2002).

We reject the defendant's suggestion, raised in conjunction with his claims of vagueness and overbreadth, that "depiction by computer" could just as reasonably be read to encompass computer-created images (and thus not depictions of a live event) consistent with "virtual child pornography" declared by

the *Ashcroft* Court to be speech protected by the First Amendment. See *Ashcroft* v. *Free Speech Coalition*, 535 U.S. 234, 256 (2002). Although we agree with the defendant's premise that our *Hinds* decision did not necessarily limit "depiction by computer" to refer only to stored electronic data, we are convinced, by what was said in that case, and by our own commonsense understanding of the term, which precedes in the statute the phrase "of any child," that it cannot reasonably be interpreted to mean images created without the use of real children. Read in pertinent part, the statute prohibits the knowing possession of "a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child." We conclude that the term "depiction by computer" refers to the method by which the image is possessed and not its content. See *Commonwealth* v. *Richards*, 426 Mass. 689, 690 (1998), quoting *Commonwealth* v. *Wotan*, 422 Mass. 740, 743 (1996) (court must not "reject 'an available and sensible interpretation . . . in favor of a fanciful or perverse one' "). Our conclusion accords with those reached by appellate courts in other jurisdictions construing the same, or similar, terms in their own child pornography statutes. See, e.g., *Fink* v. *State*, 817 A.2d 781, 791 (Del. 2003); *People* v. *Alexander*, 204 Ill. 2d 472, 485-487, cert. denied, 540 U.S. 983 (2003).

The defendant raises a second argument in support of his claim that the statute is unconstitutionally vague. He contends that the word "simulation," as it appears in subsections (i) though (vi), is ambiguous because it could be interpreted to include sexual conduct that actually never took place, but was merely imagery generated by a computer to appear as though it were a real occurrence. The defendant's logic is not unlike what he relied on in connection with his objection to "depiction by computer," and we reject it, for basically the same reasons. We point out as well that, although "simulation" is undefined in G. L. c. 272, § 29C, a related section of that chapter, § 31, expressly provides that "[s]exual conduct" includes "human masturbation, sexual intercourse, actual or simulated, normal or perverted" and that "[s]exual intercourse is simulated when it depicts explicit sexual intercourse which gives the appearance

of the consummation of sexual intercourse, normal or perverted." We examined the definition of "[s]exual conduct" prohibited by § 31, in *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 386 (1976), and held it to be constitutional. "[A] law is not vague if its meaning is ascertainable by reference to similar or related statutes, or if the questioned terms have a commonly understood meaning." *Commonwealth* v. *Sefranka, supra.* Further, as has been discussed, the United States Supreme Court in *New York* v. *Ferber*, 458 U.S. 747 (1982), upheld the constitutionality of a New York child pornography statute, N.Y. Penal Law §§ 263.15 and 263.00 (3) (McKinney 1980), which defined "[s]exual conduct" as "actual or simulated sexual intercourse." *Id.* at 765. The Court stated, "The forbidden acts to be depicted are listed with sufficient precision and represent the kind of conduct that, if it were the theme of a work, could render it legally obscene." *Id.* We presume that the Legislature, at the time of the statute's enactment in 1997, knew of preexisting law and of the decisions of our court and the United States Supreme Court, and intended the statutory language to be interpreted consistent with those statutes and decisions. See *Joslyn* v. *Chang*, 445 Mass. 344, 350 (2005).[9]

Finally, we think it important to note that the Legislature enacted G. L. c. 272, § 29C, in recognition that the "mere possession or control of any sexually exploitative material results in continuing victimization of children [because] such material is a permanent record of an act or acts of sexual abuse of exploitation of a child and that each time such material is viewed the child is harmed." St. 1997, c. 181, § 1 (2). Further, in order to "stop the sexual abuse and exploitation of children, it [was] necessary to ban the possession of any sexually exploitative materials." St. 1997, c. 181, § 1 (5). The Legislature's purpose in enacting the statute could not be clearer: "[T]o protect children from sexual exploitation . . . [by] prohibit[ing] the production of material which involves or is derived from such exploitation and to exclude all such material from the channels of trade and commerce." St. 1997, c. 181, § 1 (1). Our construction of the statute clearly effectuates the Legislature's intent.

---

[9]The Commonwealth in its brief lists child pornography statutes enacted by thirty State Legislatures that define child pornography or prohibited sexual conduct as actual or simulated pornography or conduct.

b. The challenged terms thus interpreted and clarified, we address the defendant's next argument — that the statute remains unconstitutionally overbroad because its legitimate ambit imposes a deterrent effect on speech protected by the First Amendment. The defendant argues that language in § 29C, even as limited above, will inevitably require subjective judgments as to what is proscribed, and thus impinge on areas of common pursuit and interest, such as the arts, which may be outside the realm of easily identifiable child pornography.[10] Using as his primary example a film recently released at the Sundance Film Festival ("Hounddog"), starring a twelve year old girl (Dakota Fanning), who, in the film, is depicted in the act of being raped,[11] the defendant calls the court's attention to the public controversy surrounding the film and the current debate (portrayed in the media) as to the film's artistic merit compared with the film maker's inherent exploitation of its child star.

In *New York* v. *Ferber*, 458 U.S. 747 (1982), the United States Supreme Court addressed the issue now raised by the defendant, essentially, that the statute under review was overbroad because it would prohibit the possession of materials with serious literary, scientific, or educational value. See *id.* at 773. The Court had two responses. First, it rejected the argument that "visual depictions of children performing sexual acts or lewdly exhibiting their genitals would . . . constitute an important and necessary part of a literary performance or scientific or educational work." *Id.* at 762-763. Second, the Court reasoned that the harm sought to be prevented by the statute, the sexual exploitation of children, "is irrelevant to the child [who has been abused] whether or not the material . . . has a literary, artistic, political, or social value." *Id.* at 761. The Court questioned whether any arguably impermissible applications of

---

[10]The defendant recognizes the statutory exemption provided by the Legislature to materials of a medical nature possessed by a licensed physician or psychologist, or to materials possessed by law enforcement, court officials, or Internet providers whose business it is to filter, or otherwise restrict access to, prohibited materials. See G. L. c. 272, § 29C.

[11]During the filming of the rape scene, Fanning was wearing a nude body stocking, and a social worker was nearby. Further, according to the Commonwealth, the actress was filmed only from the shoulders up. Although that information is entirely extraneous to this opinion, we think it worth noting.

the statute would constitute "more than a tiny fraction of the materials within the statute's reach," and held that "whatever overbreadth . . . should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 773-774. Although the Legislature is, of course, free to enact a more lenient set of exemptions, we conclude, indeed as we must in light of the *Ferber* case, that the Legislature's choice not to provide an exemption for artistic or scientific materials does not invalidate the statute. "[W]hatever overbreadth may exist [such as, perhaps, application of the statute to the possession of the film "Hounddog"] should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Commonwealth* v. *Provost*, 418 Mass. 416, 423 (1994), quoting *Broadrick* v. *Oklahoma*, 413 U.S. 601, 615-616 (1973).

c. The defendant makes a third attack on the statute's constitutionality, which, although related conceptually to the doctrines of vagueness and overbreadth, is sufficiently distinct to deserve separate consideration. He claims that the Legislature's use of the phrase "knows or reasonably should know to be under the age of 18 years of age" constitutes an impermissible scienter requirement because it might include situations where a defendant is mistaken about a child's age and, therefore, criminalizes an error of judgment. In support of his claim, the defendant cites the decision of *Commonwealth* v. *Pittman*, 25 Mass. App. Ct. 25, 28 (1987), in which the Appeals Court vacated a defendant's sentence under G. L. c. 265, 19 (*a*), for unarmed robbery of person over age of sixty-five, stating, "Except at the poles, judging age on physical appearance is a guess and a guess is not a basis for sending someone to jail." In general, a depiction or image of an adult person may not disclose, with any certainty, that person's age. Pictures or images of children, particularly young children, however, are different and are ordinarily distinctive such that a person viewing the picture or image knows that it depicts a child under the age of eighteen. (The defendant here appears to admit that he actually knew the children in the materials he possessed were under the age of eighteen.)

What level of scienter as to the age of a subject child is constitutionally required to convict a defendant of possession of

child pornography was not considered in either the *Ferber* or *Ashcroft* decision and, so far as we are aware, the issue has yet to be addressed by the United States Supreme Court. We have had occasion to consider a scienter requirement, similar to that challenged here, in the context of G. L. c. 272, § 29A (criminalizing the posing or exhibiting a child in a state of nudity). See *Commonwealth* v. *O'Connell*, 432 Mass. 657 (2000). In that case, the defendant maintained that the Commonwealth's proof was insufficient to support his conviction because the Commonwealth failed to present any evidence that he knew or was "in possession of such facts that he should have [had] reason to know" that the naked child depicted in a photograph (taken by the defendant) was under eighteen years of age. See *id.* at 661-663. We held that the record warranted the conclusion, beyond a reasonable doubt, that the defendant knew, or had reason to know, the victim's age, because (a) the jury reasonably could have inferred from the evidence that the child in the picture was in fact the defendant's then eight year old niece; (b) the jury also could have inferred that the defendant knew or should have known that his niece was younger than eighteen years of age; and further, (c) even if the jury had concluded that the child in the picture was not the defendant's niece, based on physical characteristics observable from the inculpatory photograph, the defendant's constructive knowledge of the child's age could be inferred. See *id.* at 662-663. See also *Commonwealth* v. *Emmons*, 98 Mass. 6, 8 (1867) (jury may consider physical appearance as factor in determining age). We noted that "the finder of fact may rely entirely on physical appearance only in cases involving 'marked extremes of old age and youth,' " but concluded that the difference in terms of sexual development between a girl eleven and one-half years old (as the Commonwealth's expert had opined the photograph depicted) and one eighteen years old, is sufficiently " 'extreme' to sustain the Commonwealth's burden." *Commonwealth* v. *O'Connell, supra* at 663, quoting *Commonwealth* v. *Pittman, supra* at 28.

Drawing from the analysis in the *O'Connell* decision, we conclude that, in a prosecution for possession of child pornography under G. L. c. 272, § 29C, in circumstances where the defendant's actual or constructive knowledge of a child's

age is disputed, the Commonwealth's burden of proof on that element may be satisfied with evidence that the physical disparity between the subject of the sexually explicit material and a person who is eighteen years of age is such that it would be obvious (beyond a reasonable doubt) to a reasonable person that the material was proscribed. Put differently, the Commonwealth must prove that no reasonable person would not have known that the child subject was under the age of eighteen. In most child pornography cases, "the images themselves [will] provide[] evidence of the ages of the persons depicted." *People* v. *Girard*, 269 Mich. App. 15, 22 (2005). See *State* v. *May*, 362 N.J. Super. 572, 594 (2003) (images admitted at trial were, themselves, evidence of ages of persons depicted). Further, the Commonwealth in many, if not most, cases will have corroborative evidence that a defendant reasonably should have known the age of a child. This evidence may often take the form of related criminal conduct (involving children) with which a defendant is charged; people or Web sites with whom the defendant has contacts; the content of e-mails sent to and from a defendant's Internet address; testimony as to admissions made by the defendant to others in the past; or the content of other evidence (i.e., books, pamphlets, notes, telephone numbers) found in the defendant's possession.[12]

A defendant may, if he or she so chooses, present evidence indicating that he or she was honestly mistaken with regard to (or reasonably did not know) the age of the child depicted in the material. See *Commonwealth* v. *Lopez*, 433 Mass. 722, 725 & n.3 (2001) (mistake of fact "defense" is available where mistake negates existence of mental state essential to material element of offense). In this manner, on a case-by-case basis, any ambiguities in the statutory requirement that the Commonwealth prove that a defendant knew, or reasonably should have known, a child's age will be eliminated and the possibility of a conviction of a defendant who reasonably, but mistakenly, believed that his conduct was lawful will be unlikely. See *New*

[12]In this case, the pornographic images located on the defendant's computer were graphically labeled. One image, for example, had the file name "cum+covered+baby00.jpg": another, found in the recycle bin of the desktop area, had the file name "I+think+she+likesem+young+2.jpg."

*York* v. *Ferber*, 458 U.S. 747, 773-774 (1982) (de minimis overbreadth in otherwise constitutional child pornography statute may be cured through case-by-case analysis). Cases raising the defense of reasonable mistake will, we expect, be rare, because as is the situation here, the children involved in the pornography will ordinarily be readily ascertainable as children. The fact that there will be very few cases at the margin raising doubt as to the age of the child, with the vast majority of cases being self-evident as to age, is sufficient, given the authority of the Legislature to regulate in this area, to conclude that the scienter requirement of the statute is constitutionally valid.

We emphasize that the language of the statute requires a defendant in all cases to "knowingly purchase[] or possess[]" the proscribed materials. It is the scope of the proscribed material that the defendant challenges as an unconstitutional infringement on expression protected by the First Amendment. We scrutinize carefully facial challenges to all criminal statutes capable, to any extent, of punishing expression protected by the First Amendment. As has been stated many times in this opinion, and others, such a statute is within constitutional limits, for purposes of challenges, such as here, to vagueness and overbreadth, so long as the statute is sufficiently explicit to give clear notice as to the proscribed conduct and does not prohibit a substantial amount of protected expression. See *New York* v. *Ferber, supra* at 764, 769-770, 773; *Commonwealth* v. *Sefranka,* 382 Mass. 108, 111, 117-118 (1980); *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977). See also *Commonwealth* v. *Arthur,* 420 Mass. 535, 539 (1995); *Commonwealth* v. *Lammi,* 386 Mass. 299, 301 (1982). We hold that G. L. c. 272, § 29C, as construed in this opinion, satisfies these standards.

3. We affirm the denial of the motion to suppress and affirm the defendant's conviction.

*So ordered.*