A Suffolk County grand jury indicted the defendant, Jose Vargas, for trafficking heroin, in violation of G. L. c. 94C, § 32E, and conspiracy to violate the Controlled Substances Act, G. L. c. 94C, § 40. The defendant filed a motion to suppress evidence (heroin and drug-related materials) seized by the Massachusetts State police pursuant to a search warrant.[2] The defendant argued in the motion that the affidavit failed to establish a probable cause nexus between the defendant's drug-related transactions and the premises searched, a second-floor apartment at 192 Magnolia Street in the Dorchester section of Boston. The affidavit alleged that the premises were used by the defendant as a "stash house" to facilitate the drug-related transactions. A Superior Court judge allowed the motion to suppress, agreeing with the defendant that the officers' affidavit in support of the search warrant application "was not sufficient to establish that illegal narcotics or related contraband may reasonably be expected be located in the place to be searched."[3] A single justice of the Supreme Judicial Court granted the Commonwealth's application for leave to pursue an interlocutory appeal of that ruling, and directed the appeal to this court.
On appeal, the Commonwealth contends that the motion judge erred in allowing the defendant's motion to suppress, because the affidavit submitted in support of the search warrant of the second floor of a two-unit apartment structure located at 192 Magnolia Street in Dorchester (Magnolia Street apartment), sufficiently supported the issuing judge's determination that there was probable cause connecting the defendant's described drug activity with his use of the apartment as a drug "stash house." More specifically, the Commonwealth argues that the motion judge (a) erroneously overlooked key facts in the officers' affidavit[4] substantially supporting the inference that the defendant used the apartment to support his drug trafficking enterprise; (b) erroneously failed to evaluate the search warrant affidavit; and (c) erroneously rejected the affiant-officers' opinions which substantially supported the inference that defendant used the apartment for a "stash house" to advance drug trafficking. We agree and reverse.
Standard of review. In reviewing a determination that there was probable cause to issue a search warrant, we consider the facts contained within the "four corners of the [search warrant] affidavit" (citation omitted), Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), and the reasonable inferences to be drawn from them. See Commonwealth v. Martinez, 476 Mass. 410, 415 (2017).
Whether there was probable cause to issue the search warrant is a question of law that we review de novo, see Commonwealth v. Tapia, 463 Mass. 721, 725 (2012), in a commonsense and realistic manner. See Commonwealth v. Molina, 476 Mass. 388, 394 (2017) ; Commonwealth v. Cruz, 430 Mass. 838, 840 (2000). A reviewing court reads the warrant affidavit as a whole, without overly parsing or severing it, or subjecting it to "hypercritical analysis" (citation omitted). Commonwealth v. Donahue, 430 Mass. 710, 712 (2000). See Commonwealth v. Anthony, 451 Mass. 59, 68 (2008) ("In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" [citation omitted] ). A court evaluates the sufficiency of a warrant application giving "considerable deference to the magistrate's determination of probable cause." Commonwealth v. Foster, 471 Mass. 236, 242 (2015) (setting forth standard of review). Commonwealth v. Kenney, 449 Mass. 840, 845 (2007) (emphasizing need for deference to trial court).
Discussion. The Commonwealth argues that the motion judge erroneously overlooked significant facts detailed in the officers' warrant affidavit establishing a probable cause "nexus" between the defendant's narcotics sales and the second-floor Magnolia Street apartment. When evaluating this "nexus" between the criminal activity and the search location, the court considers "the type of crime," in addition to the "normal inferences as to where a criminal would be likely to hide" evidence of a crime. Commonwealth v. Anthony, 451 Mass. 59, 70 (2008).
Here, we conclude that a number of facts set forth in the warrant application strongly suggested a nexus between the defendant's narcotics sales and the second-floor Magnolia Street apartment. First, the defendant previously used a "stash house" at a different location, at which officers discovered "trafficking amounts" of narcotics in addition to materials used to "cut," "package," and "distribute illegal narcotics," a fact that suggested a "pattern of conduct" for the defendant. Commonwealth v. Germain, 396 Mass. 413, 418 n.7 (1985) (indicating previous conduct relevant to probable cause).
Second, the motion judge agreed that the affidavit "provided overwhelming evidence to support a finding of probable cause" that the defendant "was engaged in the sale of heroin."[5] The warrant affidavit described "many police observations of [the] [d]efendant at the Magnolia Street apartment" indicating that the defendant was not using the apartment for his own residential or any other discernable lawful purposes. For instance, police surveillance and records from the registry of motor vehicles (RMV) revealed that the defendant primarily resided at apartment 1050, 31 Orton Marotta Way,[6] and that officers never saw the defendant traveling "to any location resembling a legitimate job." While the defendant visited the Magnolia Street apartment frequently, he rarely stayed there for long periods of time. Similarly, officers were not able to locate any RMV records for anyone living in the second-floor apartment, in contrast to RMV records identifying a family of residents living in the first-floor unit who were not suspected of criminal activity.
In the same vein, officers relied upon the results of their search of trash recovered from the address. One trash search yielded plastic bags with "missing corners," as well as plastic bags lined with "wet coffee grounds." Based on their training and experience in narcotics investigations, the officers concluded that those materials were used to package narcotics. That trash search did not yield any discarded resident mail addressed to 192 Magnolia Street. In contrast, another trash search did not yield any narcotic-related materials, but did yield discarded mail addressed to the first-floor residents. Based on the results of these trash searches, we conclude that although there may have been alternative sources for the drug-related materials in the trash from 192 Magnolia Street, that lack of certainty did not eliminate the officers' probable cause to believe that the drug-related materials emanated from the unknown, nonresident occupants of the second-floor apartment, rather than the known residents of first-floor apartment. See O'Day, 440 Mass. at 303 n.6 (suggesting probable cause undiminished by alternative explanations for evidence).[7]
Additionally, during their surveillance of the Magnolia Street address, officers frequently observed the defendant behave furtively when approaching or leaving the apartment. For example, when visiting the Magnolia Street apartment, the defendant never parked on Magnolia Street, parking instead one or two blocks away despite the availability of "numerous available parking spots in the area." The affidavit describes this as a "tactic commonly used by Vargas to deter law enforcement from determining his exact location."[8] Similarly, while the window shades in the second-floor apartment were "always drawn," officers observed a person "peeking outside" of the window before and after the defendant exited and entered.
We also agree with the Commonwealth that it was significant that the defendant's interactions with Alex Laureano, his "runner," occurred in association with the defendant's visits to the Magnolia Street apartment. The defendant "often" met with Laureano after leaving the Magnolia Street address, and on one occasion met with him directly at the Magnolia Street apartment. From the affidavit, the motion judge concluded that Laureano -- who "himself was indicted for possession with intent to distribute heroin," and "conspiracy to distribute heroin" --"often carried out heroin sales arranged by [d]efendant."[9] The motion judge acknowledged that officer surveillance revealed that Laureano and the defendant "meet on a daily basis, typically in the morning" and that "[o]fficers have noticed a pattern" of the defendant "either going to 96 Crawford," where Laureano lives, or Laureano going to 192 Magnolia [Street] every day," leading officers to "believe that the purpose of this daily meeting is so the defendant "can replenish [Laureano's] supply of heroin for distribution and simultaneously so [the defendant] can collect proceeds from [Laureano]."[10]
Although these details, viewed as "individual fragments," may have been seen by the motion judge as insufficient to demonstrate probable cause, when viewed "as a whole," they created a "substantial basis" to believe that evidence of criminal activity was likely to be found in the Magnolia Street apartment. Commonwealth v. Matias, 440 Mass. 787, 794 (2004) (urging consideration of evidence in entirety). O'Day, 440 Mass. at 297-298. These factors, in combination with the officer-affiants' opinions,[11] based on their considerable training and experience, that the defendant was using this apartment to facilitate his drug trade, provided probable cause that the defendant was using the Magnolia Street apartment as a "stash house" for narcotics distribution.
Conclusion. For the reasons explained above, so much of the order on the defendant's motion to suppress as allowed the suppression of evidence related to 192 Magnolia Street is reversed. The order is otherwise affirmed.
So ordered.
Reversed in part; affirmed in part.

The warrant was the culmination of investigations conducted by both the State police and the Boston police department. The investigations had merged by the time the search warrant was obtained and executed.

The motion sought to suppress illegal narcotics and related items seized from three different addresses associated with the defendant. The order allowed the motion to suppress solely as to 192 Magnolia Street.

The sixty-two page, 164 paragraph affidavit submitted in support of the warrant application was sworn to by both a State trooper and Boston police officer who participated in the year-long investigation.

The judge noted that this evidence included "many controlled buys in which" two informants called telephone numbers associated with the defendant and arranged to purchase heroin, and some occasions where the defendant "himself completed the transaction at a location arranged by defendant and the confidential informant."

The judge denied the defendant's motion to suppress the search of defendant's residence at Marotta Way where surveillance revealed that on three occasions, the defendant left his residence and "proceed[ed] directly to the place where he sold drugs to a confidential informant."

The motion judge reasoned that the drug-related trash was insufficient to demonstrate probable cause because it was unclear who had placed that trash in the barrel, noting that the drug-related trash did not contain any "papers bearing [the] [d]efendant's name and address," and concluding that there was not probable cause "to believe that illegal narcotics or related items would be found at the Magnolia Street apartment." In this regard, we agree with the Commonwealth that the motion judge required an undue degree of certainty in his assessment of the affidavit. Although it is possible that the drug-related trash was left by another Magnolia Street resident, or an unknown passerby, that lack of certainty did not detract from probable cause because the trash, when viewed alongside the previously-discussed factors, created a "substantial basis" for believing that the second-floor Magnolia Street apartment would contain evidence of criminal activity. A warrant application must establish "probable cause, not certainty," Commonwealth v. Escalera, 462 Mass. 636, 646 (2012), that evidence of a crime "would be found in particular locations." Anthony, 451 Mass. at 72. Consequently, "[t]he fact that there may be other explanations for the activities observed by the police does not negate" probable cause. O'Day, 440 Mass. at 302 n.6 (stating probable cause unaffected by alternative explanations for evidence). See id. at 297-298 (holding probable cause undiminished by lack of certainty and urging analysis of affidavit in its entirety). See also Commonwealth v. Matias, 440 Mass. 787, 795 (2004) (suggesting possibility that drugs found in trash originated from "other apartments in the building" failed to negate probable cause).

The motion judge concluded that the defendant's habit of parking blocks away from the Magnolia Street apartment "add[ed] little to the probable cause analysis."

The motion judge denied the motion to suppress the warrant search of Laureano's apartment at 96 Crawford Street.

Nevertheless, the motion judge discounted the importance of these meetings between the defendant and his "runner" after leaving the Magnolia Street apartment because "the affidavit did not report any observations relative to the drug trade."

A court may not use an "experienced officer's" conclusions about the facts in an affidavit "as a talismanic formula," for probable cause "where evidence to support such a finding is otherwise lacking." Commonwealth v. DiAntonio, 8 Mass. App. Ct. 434, 440-441 (1979). The court may, however, "reasonably rely" on that officer's conclusions, based on his experience investigating a specific crime, "that evidence of that crime would be found at" a particular location. Kenney, 449 Mass. at 846. Here, both affiants detailed their extensive training and experience in carrying out narcotics investigations, and explained the basis for their opinions in a sixty-two page affidavit. Although the motion judge could not rely solely on the affiants' final conclusions, the judge should have considered the affiants' experience-based opinions when evaluating the warrant application for probable cause. See Kenney, supra at 846 (suggesting affiants' experience relevant to probable cause).