NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-46                                          Appeals Court

COMMONWEALTH  vs.  PAUL J. STEWART.

No. 17-P-46.

Middlesex.      March 2, 2018. - November 14, 2018.

Present:  Maldonado, Blake, & Desmond, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Evidence,
    Identification, Identification of victim, Self-serving
    statement.  Identification.  Practice, Criminal,
    Identification of defendant in courtroom, Jury and
    jurors.  Jury and Jurors.



    Complaint received and sworn to in the Somerville Division
of the District Court Department on March 19, 2015.

    The case was tried before Paul M. Yee, J.


    Kerry A. Haberlin for the defendant.
    Randall F. Maas, Assistant District Attorney, for the
Commonwealth.


    MALDONADO, J.  After a jury trial, the defendant was

convicted of assault and battery by means of a dangerous weapon.

The offense stemmed from events that occurred on March 18, 2015.

Although the defendant raises several issues on appeal, his

primary argument is that the judge erroneously permitted two eyewitnesses to make an in-court identification. The defendant claims, contrary to the judge's explicit ruling, that the witnesses had not participated in a prior out-of-court identification procedure and, therefore, the in-court identifications were inadmissible under Commonwealth v. Crayton, 470 Mass. 228 (2014). Because we conclude, as did the judge, that Crayton does not apply where, as here, the witnesses made a prior identification of the defendant at the scene of the crime, we affirm.

Background. On March 18, 2015, at approximately 4:30 P.M., M.R. was walking down Governors Avenue in Medford when she heard two people, a man (later identified as the defendant) and a woman (the victim), arguing. From a distance that M.R. estimated to be about the size of the court room, she saw that as the woman started to walk away, the defendant struck her from behind with a cane, causing the woman to fall to the ground and lose consciousness. The defendant then tried to drag the woman, who was not moving, to the curb, where she began to "move a little bit." M.R. telephoned 911 and watched as another bystander (K.E.) approached the two individuals. M.R. never lost sight of the defendant, and when the police arrived, she pointed him out as the perpetrator of the assault.

The second witness, K.E., a nurse, was backing into a parking space on Governors Avenue, when she too observed the defendant strike the victim with a cane. She got out of her car, and as she walked toward the defendant and the victim, she dialed 911 from her cellular telephone. When the defendant attempted to move the victim toward the curb, K.E. told him, "Put her down." K.E. then observed the victim regain consciousness and try to crawl away. She also noticed that the victim's right temple was red. The victim stood up, and using the cane, which had been left on the ground, she started to walk away with the defendant. To keep the two individuals at the scene until the police arrived, K.E. falsely announced, "You lost some belongings in the snow bank."

Meanwhile, Medford police Sergeant Joseph Casey was driving to work on Governors Avenue, when his attention was drawn to two women looking concerned on the center island. He stopped his vehicle and spoke to M.R. and K.E.; they directed his attention to the couple who were walking up Governors Avenue. Casey approached the defendant and the victim and spoke to them. Shortly thereafter, Officer Robert Furtado arrived and took over for Casey.

Furtado also spoke to the couple. The defendant identified the woman with him as D.O.[1] and denied "anything happening." However, after hearing from M.R. and K.E., Furtado seized the cane and placed the defendant under arrest.

At trial, Casey identified the defendant as the same individual M.R. and K.E. had pointed out to him at the scene. Furtado identified the defendant as the same man he arrested after M.R. and K.E. pointed him out, and M.R. and K.E. each separately identified the defendant as the same individual they had observed striking the victim with a cane on Governors Avenue.

Discussion. 1. Motions in limine. Prior to trial, the Commonwealth and the defendant filed motions in limine pertaining to M.R. and K.E.'s anticipated in-court identifications. In its motion, the Commonwealth asserted that identifications by the two civilians were admissible because they were eyewitnesses to the crime who had pointed out the defendant to the police at the scene while the defendant was still in their presence. Citing Crayton, 470 Mass. at 238-246, the defendant countered that the witnesses' identifications were inadmissible because the witnesses "did not identify the defendant as the perpetrator of the alleged crime at any time

_____

[1] The defendant provided the woman's full name to Furtado.

prior to the trial" and "did not positively identify the defendant as the perpetrator prior to the trial," and "there is not good cause to permit in-court identification at the trial." The judge heard arguments on the motion and, rejecting the defendant's claim that Crayton applied, ruled in favor of the Commonwealth, stating:  "There was an unequivocal, positive identification of the defendant during a non-suggestive identification.  So there's good reason to admit their identification in court."  See Commonwealth v. Dew, 478 Mass. 304, 315 (2017).  Contrast Commonwealth v. Collins, 470 Mass. 255, 262 (2014).

In Crayton, 470 Mass. at 241, the Supreme Judicial Court announced a new rule, holding that "[w]here an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court identification as an in-court showup, and shall admit it in evidence only where there is 'good reason' for its admission."  The defendant asserts that because neither M.R. nor K.E. participated in an out-of-court pretrial identification procedure, under the rule pronounced in Crayton, they should have been prohibited from identifying the defendant in court.  We disagree.

The Crayton court pronounced the inadmissibility of in-court identifications (with some exceptions) where "the Commonwealth failed earlier to conduct a less suggestive out-of-

court identification procedure, and the in-court identification is therefore the only identification of the defendant made by an eyewitness" (emphasis original). Id. This is where the defendant's argument fails.

Here, as the judge properly found, M.R. and K.E.'s in-court identifications of the defendant were not their only identification of him. M.R. and K.E. witnessed the crime. They saw the defendant strike D.O., and without ever losing sight of the defendant, they each pointed out the defendant to the police. As the Crayton court explained, "Reliable evidence of eyewitness identification will continue to be admissible where it arises from a nonsuggestive out-of-court identification procedure." Id. at 244. Accordingly, the defendant's reliance on the Crayton rule for the exclusion of M.R. and K.E.'s in-court identifications is misplaced.[2]

Moreover, even if we were to assume that M.R. and K.E.'s in-court identifications were the only identifications they made of the defendant, thus rendering their in-court identifications akin to a suggestive showup identification, there was "good reason" to permit them to identify the defendant. See id. at 241. The rule announced in Crayton provides that "there may be

---

[2] We also see no merit in any assertion that the identifications should have been excluded because their probative value was outweighed by the danger of unfair prejudice. Dew, 478 Mass. at 315.

'good reason' for the first identification procedure to be an in-court showup." Id. at 242. The court stated, for example, that "'[g]ood reason' might . . . exist where the witness is an arresting officer who was also an eyewitness to the commission of the crime, and the identification merely confirms that the defendant is the person who was arrested for the charged crime." Id. Although M.R. and K.E. are not police eyewitnesses, they were eyewitnesses who never lost sight of the culprit and remained on the scene until police arrived to make the arrest. Under these circumstances, their in-court identifications were similarly confirmatory.

Finally, even assuming arguendo that the two identifications were erroneously admitted, we see no prejudice to the defendant flowing from their admission. The defendant's identification was proved mostly by circumstantial evidence. Both police witnesses identified the defendant as the person the eyewitnesses had pointed out to them, and Furtado further identified the defendant as the person he had arrested. See, e.g., Commonwealth v. Evans, 469 Mass. 834, 842 (2014) ("the Commonwealth may submit a case wholly on circumstantial evidence, and inferences drawn from that evidence need only be reasonable and possible; [they] need not be necessary or inescapable" [citations and quotation omitted]).

Furthermore, the defense did not make the defendant's identification its focus. Rather, the defense centered on the defendant's denial that "anything happen[ed]." The defendant argued that the victim had fallen in the snow and that, because neither witness was in a position to observe the incident in its entirety,[3] they both simply assumed that he had struck the victim with the cane that was observed on the ground.

2. Remaining claims of error. a. Identity of the victim. Contrary to the defendant's argument on appeal, the name of the victim is not an essential element of the crime that must be proved. See Commonwealth v. O'Connell, 432 Mass. 657, 660 (2000); G. L. c. 277, § 35. Here, it is reasonable to infer from the record that the woman who was with the defendant when the officers arrived on the scene was the same woman that M.R. and K.E. had seen the defendant hit with the cane. Nothing more was required.[4]

---

[3] He argued that M.R. was some distance away and that by the time loud talking attracted her attention, the victim was already on the ground and, further, that K.E. was distracted because she observed the incident while parking her car.

[4] Commonwealth v. Koney, 421 Mass. 295, 301-302 (1995), upon which the defendant relies, is inapposite. That case, involving a subsequent offense charge, addresses the question of the proof required to establish the identity of the defendant and the individual named in the prior conviction. Here, the victim's legal identity was irrelevant.

b.  Defendant's statement to police.  At trial, the defendant objected to the admission of his statement to Officer Furtado denying that "anything happen[ed]."  Assuming without deciding that the judge erred by permitting the Commonwealth to introduce the statement, see Commonwealth v. Smith, 473 Mass. 798, 813 n.22 (2016), the error was not prejudicial.  See Commonwealth v. Womack, 457 Mass. 268, 274-275 (2010).  The denial was exculpatory and consistent with the defense that the witnesses could not have seen what they claimed to see.  See Commonwealth v. Emeny, 463 Mass. 138, 149 (2012).  See also Womack, supra at 276 (no prejudice where defendant's general denial of accusation was erroneously admitted in evidence; "[t]he core of any prejudice is more likely caused by admission of the accusations than the denials").

c.  Designation of sleeping juror as alternate.  After the judge observed a juror with his eyes closed, the judge questioned whether the juror had been sleeping.  During a voir dire conducted at sidebar, the juror explained that he worked nights.  Defense counsel agreed with the judge's suggestion that they make the juror an alternate, and at the conclusion of the evidence and after further discussions, the judge designated the

juror as an alternate.[5]  The judge "had both discretion in choosing the remedy best suited to address the situation and ample grounds to justify [the] action" of designating the apparently sleeping juror as an alternate.  Commonwealth v. The Ngoc Tran, 471 Mass. 179, 191 (2015).

Judgment affirmed.

---

[5] The alternate juror was not called upon to participate in the jury deliberations.  See Commonwealth v. The Ngoc Tran, 471 Mass. 179, 190 n.11 (2015).